### PIERCE vs. DELAMATER.

Under the new Constitution of this State, it is the right and the duty of a Judge of the Court of Appeals to take part in the determination of causes brought up for review from a subordinate court of which he was a member, and in the decision of which he took part in the court below.

THIS was a writ of error to the Supreme Court; and the judgment was affirmed by the unanimous opinion of the Judges. After the cause had been argued, and while the Judges were in consultation upon it, BRONSON J. expressed an opinion upon his right and duty to take part in the decision, which opinion he afterwards committed to writing. The case involved no other questions which seemed of sufficient importance to be reported.

BRONSON J. Having acted as Chief Justice in the determination of this cause by the Supreme Court, a question has arisen in my own mind, though it was not mentioned at the bar, concerning my right to take part in the decision of the cause by this court. If the right exists, it is of course my duty to act.

This is a question of a good deal of practical importance, as not less than four of the present members of the court have recently sat in other courts whose judgments may come here for

3

review; and from the manner in which this court is constituted, one-half, at the least, of its members will always be in the like condition.

Under the Constitution of 1821, the Chancellor and Justices of the Supreme Court, though members of the court for the correction of errors, were forbidden to take part in the affirmance or reversal of their own decrees or judgments. (*Art.* 5, § 1.) This provision, with an extended application, afterwards became a part of the statute law, as follows:—"No judge of any appellate court, or of any court to which a writ of certiorari or of error shall be returnable, shall decide, or take part in the decision of any cause or matter which shall have been determined by him when sitting as a judge of any other court." (2 *R. S.* 275, § 3.) The Constitution of 1821 has been abrogated; and the only question is, whether the statute has not been virtually repealed. I think it has. The Constitution of 1846 confers the same powers on all the Judges of the Court of Appeals, and on all the Justices of the Supreme Court, with the single exception, that no judicial officer can exercise his office while under impeachment. (*Art.* 6.) As the statute denies to a particular Judge or Justice, though not under impeachment, the powers which may be exercised by his associates, it comes in conflict with the fundamental law, and must of necessity be overthrown. In the case of judicial officers deriving their authority from the Constitution, it is settled, that the legislature cannot add any disqualification to those which are found in the Constitution itself. (*Lieut. Governor's case,* 2 *Wend.* 213; *Chancellor's case,* 6 *id.* 158. *And see per Thompson, J. and Kent Ch., J., in Yates* v. *The people,* 6 *John* 408, 416.) The principle is quite too plain to admit a serious doubt that it has been properly settled.

There is nothing in the nature of the thing which makes it improper for a Judge to sit in review upon his own judgments If he is what a judge ought to be—wise enough to know that he is fallible, and therefore ever ready to learn; great and honest enough to discard all mere pride of opinion, and follow truth wherever it may lead; and courageous enough to ac-

Pierce *v.* Delamater.

knowledge his errors—he is then the very best man to sit in review upon his own judgments. He will have the benefit of a double discussion. If right at the first, he will be confirmed in his opinion ; and if wrong, he will be quite as likely to find it out as any one else. But I need not labor to maintain a principle which has been fully established, by abrogating the disqualification in question, after it had formed a part of our fundamental law for nearly three-fourths of a century. (*Const. of* 1777, *Art.* 32. *Const. of* 1821, *Art.* 5, §1.)

There is another and very decisive reason in favor of the view which I entertain of this question ; but as the point has not been considered by my brethren, and the matter stands firmly enough on the ground already noticed, I shall proceed no further with the discussion.

I am of opinion that it is both my right and duty to take part in reviewing the decisions of the Supreme Court while I was a member of it, and shall act accordingly.

All the other members of the Court concurred in the result of this opinion; and three of them, to wit, JEWETT, CH. J., who had been a Justice of the Supreme Court, RUGGLES, J., who had been a Circuit Judge, and JONES, J., who had been Chief Justice of the Superior Court of the city of New-York, subsequently took part in reviewing their own decisions while sitting in the several Courts which have just been mentioned.