# WILLIAM F. PURCELL
## *vs.*
## JAMES COLEMAN Et Al.*

1. Delivery of possession under a parol contract for the sale of land will not be sufficient of itself to entitle the vendee to specific performance. The possession must be united with the payment or expenditure of money in the purchase of improvement of the land.
2. And the possession must have been taken with the consent of the vendor and in pursuance of the agreement and must be such a possession as would subject the purchaser to an action of trespass unless he be entitled to a decree for specific performance.
3. In equity very little reliance ought to be placed upon loose conversations or admissions of a party which are sought to over balance his solemn denial on oath in his answer.
4. Evidence of admissions of part performance of a parol contract to convey land are not admissible for the purpose of proving part performance.

Equity. 1706. In Special Term. Affirmed in General Term March 5, 1864.

BILL for a specific performance of a parol contract to convey lands.

THE CASE is stated in the opinion.

MESSRS. BRENT and MERRICK for plaintiff:

The Statute of Frauds is not relied on or intimated in the answer of defendants; but if it had been, it would not apply in this case.

For circumstances which take a case of parol sale or exchange of land out of Statute of Frauds. See Butcher *vs.* Stapely, 1 Vern., 363; Pike *vs.* Williams, 2 Vern., 465; 9 Peters, 103; 1 Story's Eq., 759.

The giving possession is part performance. 1 Story's Eq., Sec. 765, note 1; Stewart *vs.* Dent, (N. & S.), 4 July, 1786; Simmons *vs.* Hill, 4 H. & McH., 252, S. C. of Md.

*Affirmed by the Supreme Court of the United States, see Purcell *vs.* Coleman, 4 Wall., 513.

The possession being mutually given and taken by the parties, entitled complainant to specific performance of the agreement. Boon *vs.* Chiles, 10 Peters, 177.

Time was not of the essence of the contract, and it was enough that Purcell was ready to give a legal title, when the deed to him was ready to be executed. Brashier *vs.* Gratz, 6 Wheat., 528; Taylor *vs.* Tongworth, 14 Pet., 172.

An exchange will be specifically decreed. McIver *vs.* Kyger, 3 Wheat., 53.

It is enough if the vendor has a good title at time of decree. Hepburn *vs.* Auld, 5 Cranch, 262.

Complainant is ready to convey a good title at the hearing. I Story's Eq., Sec. 777; Hepburn *vs.* Dunlop, 1 Wheat., 179; Dart on Vendors, 211 and 209.

Mr. Gilbert S. Miner, for defendant:

The defendants maintain first, that the complainant proves no contract of exchange at all; the statements of Coleman, having led no party to act upon them, are, even if accurately remembered by witnesses, who did not charge their minds therewith, but loose and careless declarations which, if they be evidence, are of little weight. Stark, Ev., Vol. II, 24; Flagg *vs.* Mann, 2 Sumn., 486.

2. That the contract proved to have been admitted by Coleman is too vague and uncertain to be enforced by a court of equity. Colson *vs.* Thompson, 2 Wheat, 336; Hall *vs.* Hall, 1 Gill, 383; Millard *vs.* Ramsdell, Harr., ch. 373; McCue *vs.* Johnstone, 25 Pa., 306; Prentup *vs.* Mitchell, 17 Ga., 538.

3. The complainant not being able to make a title free from incumbrance, is not entitled to a decree for specific performance. Morgan's heirs *vs.* Morgan, 2 Wheat., 290.

4. That the contract set forth in the bill of complaint is *prima facie* within the Statute of Frauds, and that the acts of part performance alleged are not sufficient to take the contract out of the statute. Watts *vs.* Waddle, 6 Pet., 389;

Caldwell *vs.* Carrington's Heirs, 9 Pet., 96; Brashier *vs.* Gratz, 6 Wheat., 528; Thompson *vs.* Todd, 1 Pet., C. C., 380; McKee *vs.* Phillips, 9 Watts, 86; Young *vs.* Glendenning, 6 Watts, 510; Sangwer *vs.* Fry, 17 Pa., 495; Moore *vs.* Small, 19 Pa., 461.

MR. JUSTICE WYLIE delivered the opinion of the Court:

This bill is for the specific execution of a verbal contract for the exchange of land, on the ground of part performance. The complainant avers that about the 10th of January, 1861, he entered into an agreement with James Coleman, that he would convey to Coleman a tract of land in Fairfax County, Virginia, in exchange for a house and lot in the City of Washington, which Coleman was to convey to complainant. Complainant further avers that in pursuance of this agreement he was put into possession of Coleman's house and lot, by means of the delivery to him by the latter of the key of the house. Coleman denies, in his answer, that the key was delivered with any such view, but only for the purpose of enabling Purcell to examine the condition of the property, during the pendency of the negotiation between them.

All the evidence which has been taken in the cause, was taken by complainant; no evidence whatever has been taken by the defendants.

Defendants deny the delivery of possession, and rely on the statute of frauds and perjuries.

The first section of the statute of frauds and perjuries, is in these words: "All leases, estates, interests of freehold or terms of years, or any uncertain interest of, in, or out of any messuages, lands, tenements, or hereditaments made or created by livery and seisin only, or by parol, and not put in writing and signed by the parties so making or creating the same, or their agents thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall neither in law or equity be deemed

or taken to have any other or greater force or effect, any consideration for making any such parol, leases or estates, or any former law or usage to the contrary notwithstanding."

This statute has been in force in England and in this country for a period of about two hundred years, and is the law of this District at the present time.

It is not possible to mistake its intent and meaning.  Its object was to put an end to transfer of estates of land by parol agreements, or by livery of seisin.  The evil to be remedied was that experience had shown that men had in many cases been deprived of their estates by the fraud of parties, and the perjury of witnesses swearing to the existence of verbal agreements, and of livery and seizin of lands, contrary to the facts in such instances, thus doing great wrong to individuals, and rendering titles insecure.  This was an evil which no civilized people could long tolerate.  To the great majority of the human family, of all earthly possessions land is the most cherished; they toil for it as for no other wealth and defend its possession with their lives.

Of this statute Lord Nottingham said that every line of it was worth a subsidy, and Lord Kenyon said it was one of the wisest laws in our statute books.

If the plain language as well as the spirit of the statute were to be allowed to guide to a decision in this case, the Court could not long doubt or debate as to the decree.  For the statute declares that no transfer of title to real estate made by parol only, or by livery of seisin, shall be valid, notwithstanding any consideration for making the same.

But with a people most of whom were ignorant of the art of writing, and whose habit of seeing estates conveyed by parol, and livery of seisin, was inveterate, by at least four hundred years of age, the statute, unless tempered to the times by judicial interpretation, was deemed likely to become a parent of great hardship in individual cases.

This supposed hardship of the statute, and the remedy

which the courts applied are clearly and correctly stated in a note of Mr. Chitty to the second book of Blackstone's Commentaries, which I shall quote: "Courts of Equity, though the practice has been lamented, have long been in the habit of deciding upon equitable grounds in contradiction to this positive enactment. The earliest case of the kind appears to have been that of Foxcroft *vs.* Lyster (Roll's P. C. 108). By the highest tribunal in the realm it was decided to be against conscience to suffer a party who had entered into land, and expended his money on the faith of a parol agreement to be treated as a trespasser; and for the other party in fraud of his agreement (although that was only verbal) to enjoy the advantage of the money so laid out. This determination, though in the teeth of an act of Parliament, was clearly founded on sound abstract principles of natural justice, and confirmed as it has been by an almost daily succession of analogous authorities, is not now to be questioned."

As to the acts of part performance sufficient to take the case out of the statute: "It is in general of the essence of such an act that the Court shall by reason of the act itself without knowing whether there was an agreement or not, find the parties unequivocally in a position different from that, which, according to their legal rights, they would be in if there were no contract." Per V. C. Wigram in Dale *vs.* Hamilton, 5 Harris, 381. For instance, if possession have been delivered, so that the purchaser would be a trespasser on the land, if there were no contract for its purchase under which he obtained possession, this, according to some authorities, would constitute such a change in the situation of the parties, as to call for the interposition of a court of Equity to decree a specific performance of the parol agreement, to save the purchaser from the fraud of the vendor, who otherwise might sue him in trespass and recover damages, when, if the facts could be shown, his possession was rightful and not tortious. This, at least, is the reason

given by many of the authorities on this point. And yet, in the language of Woodward, Justice, in Moore *vs.* Small, 7 Harris (Pa.) Rep., 461, possession is an act which admits of compensation, and, therefore, too much is made of it when it is treated as sufficient ground for specific execution. It may be added, also, that proof of the fact that the party had been put into possession of the land, with the consent of the owner, would be enough to defeat a recovery of damages in any action of trespass which the latter might bring against him. But whether the reasons given for the rule be good or otherwise the authorities for the rule are numerous and weighty, especially in the English Courts.

Other authorities, however, seem to hold that the delivery of possession alone would not be sufficient in all cases.

In Moore *vs.* Small, already referred to, the Court say that "every parol contract for the conveyance of land is within the Statute of Frauds, except when there has been possession, and such a part performance as cannot be compensated in damages," and "without possession taken and maintained under the contract, there can be no pretence of part performance."

In Young *vs.* Glendenning, 6 Watts, 510, Chief Justice Gibson says: "Slight and temporary erections for the tenant's own convenience, doubtless give no equity; but permanent improvements give an indefeasible title to have the contract executed." The same doctrine is reiterated and confirmed in Gangwer *vs.* Fry, 5 Harris, 495. The true principle in the abstract is to be found clearly and neatly stated by Rogers, Justice, in McKee *vs.* Philips, 9 Watts, 85: "Nothing is to be considered a part performance which does not put the party into a situation which is a fraud upon him unless the agreement be performed."

To these authorities may also be added the earliest case decided after the passage of the statute, the case of Foxcroft *vs.* Lyster (Colles P. C., 108), cited in Chitty's note to Black-

stone, which has already been quoted, when it was held by
the Court that it was against conscience to suffer a party
who had entered into land and expended his money on the
faith of a parol agreement, to be treated as a trespasser, and
for the other party in fraud of his engagement (although
that was only verbal) to enjoy the advantage of the money
so laid out."

The rule, as has been said, first came in with this case of
Foxcroft *vs.* Lyster, which is the foundation of all the subse-
quent authorities, and the reason there given for the inter-
ference of a court of equity was not merely, or mainly, the
delivery of possession under the parol agreement, but the
expenditure of money by the purchasers in improvements
upon the land.

Without a further examination of the authorities in this
place, upon this subject, it is believed that, when all the
circumstances of the several cases are taken into account,
they will be found to be by no means irreconcileable.   And
when we look at the reason and spirit of the rule, we are
brought to the conclusion that the correct interpretation
obtained from a comparison of all the authorities is this:
that delivery of the possession under a parol contract for
the sale of land will not be sufficient of itself to take the
case out of the statute; but that possession united with the
payment or expenditure of money in the purchase or im-
provement of the land, will be sufficient for that purpose.

But by all the authorities the law is clear that the pos-
session taken must have been taken with the consent of the
vendor, and in pursuance of the agreement, and must be
such a possession as would subject the purchaser to an action
of trespass, unless he be entitled to a decree for specific per-
formance.   And this alone is enough to defeat the claim of
complainant in this case.

Let us look at the facts of his case as made out by com-
plainants' witnesses.

It appears from the evidence that about the 10th of Janu-

*9*

ary, 1861, Purcell and Coleman made a verbal agreement for the exchange of the two pieces of property in question, and that Purcell was to have the deeds prepared for that purpose. There was no actual entry upon or delivery of possession of the property on either side. Coleman's house and lot remained unoccupied, and Purcell's farm continued in the possession of his own tenant. The parties were never seen together upon the premises of either. Coleman, however, admitted to several of the witnesses that he had given Purcell possession of his house, and that Purcell had given him possession of the farm, the one in exchange for the other. The witnesses do not prove that he admitted in what ways, or how, this possession was given or taken, on either side. The bill avers that "about the 10th day of January last a trade was made by the said Coleman and your orator, and the possession and key delivered to your orator, by the said Coleman, and the full payment admitted by him by receiving the property above named in Fairfax Co., Virginia." The answer of Coleman denies positively that any possession had ever been taken or given by him, and says that the delivery of the key to Purcell was intended only to enable him to get into the house to examine it. It is to be observed that the bill itself does not pretend that Purcell had ever delivered possession of the farm to Coleman, but only that Coleman had received the farm in payment for his house and lot in Washington, the possession of which Coleman had given to complainant along with the key; that is, as I understand it, possession was delivered by passing the key as a sign or symbol that thereby the possession was delivered. And although the witnesses of complainant swear that Coleman had admitted to them that he had delivered possession of the house to Purcell, and received possession of the farm from him in exchange, yet it is perfectly indisputable, both from the bill itself, and from their whole statements taken together, that in fact, there had been no actual possession delivered or taken on

the one side or the other. It appears that Purcell understood that the transfer of the key as a symbol, gave him not only possession of the house to which the key belonged, but had the other magical effect also, of transferring to Coleman the possession of the farm, which he was to take in exchange for his house.

Not a solitary witness proves that Purcell was seen in possession of the house or that Coleman was ever seen upon the farm. If there had been such actual possession delivered and taken the fact could have been established by a hundred witnesses.

Thus both pieces of property continued to remain after the date of the agreement, "about the 10th of January, till the 22d of the same month," just twelve days, when Coleman moved into his house. This step on his part, was immediately followed by a proceeding against him for forcible entry and detainer, set on foot by Purcell. The two justices who tried the case decided that Purcell was entitled to the possession, fined Coleman fifty dollars and the costs, and on his failure to pay the same committed him to prison, whence he was discharged under *habeas corpus*, by the late Circuit Court. It is true also that whilst these proceedings were going on, Coleman, for the sake of obtaining mercy from the tribunal, by whom he appears to have been regarded as a culprit, consented to leave the house, and surrender the key to the constable, by whom it was passed into the hands of Purcell along with the actual possession.

Thus was closed the forcibly entry and detainer against Coleman; and I must say there are to be found but few examples of greater wrong, or more high handed oppression than this. In this way and for the first time Purcell is now found to have had the actual possession of the property given to, or taken by him. After this it is shown by the evidence he tried to rent the property, and for that purpose put up a notice upon the premises.

But in the meantime Coleman, not feeling exactly satis-

fied to have been thus summarily kicked out of his own house, found another purchaser for it, in Mrs. Miner, the wife of Gilbert S. Miner, to whom he conveyed the property for a valuable consideration, by deed, dated 9th March, 1861. Miner, it is probable, purchased with notice of Purcell's claim. The house, however, was still unoccupied, and on the 27th of the same month Miner, finding it closed, procured a key to be made with which he opened the door, and effected an entrance. He was not, however, to be permitted long to remain in peace. Another warrant from the same justices was immediately issued against him; the justices came upon the ground, examined witnesses, and pronounced the same sentence of fine, costs and imprisonment against the defendant as in the prior case against Coleman. Miner was compelled to surrender his possession. More fortunate, however, than Coleman, by the favor of his adversary, Miner escaped the imprisonment, and the fine and costs remain, it is said, unpaid to this day.

After this, and only after this, was it that Purcell's possession of the property began. He then did actually enter into possession himself, and having fortified his title in this way he filed this bill on the 29th of April asking for a specific performance against the defendants, Coleman and Miner.

The case in its most favorable aspect for the complainant, is nothing more than a parol agreement for the exchange of land, without delivery of possession or the expenditure of a dollar of money by either party. The delivery of the key was only symbolical, and in this view was an idle act. Even the old ceremony of livery of seisin required that the turf or twig should be passed from the hands of the vendor to the purchaser upon the land itself, and in the presence of witnesses. The possession which shall take a case away from the statute, is such possession as would subject the party to an action of trespass *quare*

*clausum fregit* in case the agreement of sale were not upheld by the Court. The key in Purcell's pocket carried to him no such liability. The possession afterwards obtained from the justices was simply an outrage upon the rights of Coleman which he resisted at first with determination and then submitted to under duress, and the same may be said as to Miner.

Nor was there any mutuality in the case. The farm was never conveyed to Coleman; nor is it alleged in the bill or shown in the evidence that Purcell ever gave him possession even by the delivery of a symbol or that he ever spent a day upon the place. It is true the bill avers that a deed for the farm had been tendered by Purcell to Coleman, but no date is mentioned when this offer is made, and the tender amounted to nothing, if made, after Coleman had taken possession of his house on the 22d of January, and thus as well as in other forms given Purcell to understand, that he would not complete the exchange which had been agreed upon verbally. And if made before that date, the refusal to accept the deed by Coleman was notice to Purcell that the former regarded the agreement as void.

Tender of a deed to bind a party to a void contract is a vain act. From that date (22d January) Purcell was a wrong-doer, and his taking possession, and the money he may have since expended upon the property will avail him naught, for it has all been done in defiance of Coleman and against his consent. Coleman had a perfect right to take possession of the property and to announce to Purcell, as he did, that he would not carry out the verbal agreement, and it was Purcell's duty to sumbit to the loss of the advantage which he believed he had gained. Had he done so he would have stood precisely where he had stood for two weeks before, without having suffered one dollar of injury. The loss of the advantage he had in the bargain constitutes no ground on which to ask the aid of a court of equity. It could not be a fraud in Coleman to refuse to

perform an agreement which the statute declared to be void.  Otherwise, the statute would be absolutely annulled by the court, and the greater the advantage which one of the parties had gained in a bargain the greater would be the fraud to deprive him of it.  But the courts look at the subject in a different way.  With them equality is equity, and they will always carry the statute into effect where the result would be to leave the parties in the situation they occupied before the bargain.  Even payment of the purchase money will fail to secure their assistance except to recover it back.  And, in my opinion, delivery of possession, by livery of seisin, is just as void to pass an estate, under the statute, as a parol agreement itself.  It is so declared to be in express terms.  For the purposes of this case it is not necessary to go so far, but it would seem to be the better opinion that the law is now settled as it was settled in the first case that arose under the statute, Foxcroft *vs.* Lyster, that to take a case out of the statute not only must possession have been delivered but the purchaser must also have expended his money in valuable improvements on the land.

Here the opinion might be closed but it is deemed proper to consider the character of the evidence which has been taken in the cause.

No witnesses were examined for the defendants, and the evidence of complainant's witnesses proved nothing in regard to the contract or the possession in pursuance of it except what Coleman had admitted to them.  The examination of the witnesses was conducted by complainant in a very extraordinary and improper style.  Leading questions, in some instances, were put in such a way as fairly to dragoon the witnesses as to their answers; and in other instances the interrogatories were altogether irrelevant or impertinent.  Something of this is, perhaps, to be pardoned to a party who was conducting his own cause, and excited either by the belief that his adversary was trying to defraud him, or by the hope of advantage to himself.  However

that may have been, his own depositions fail, as we have seen, to sustain his cause.

But evidence of this kind (admissions) in a cause like the present ought not to be allowed much consideration, even if they are admissible at all, in opposition to the sworn answer of the defendant. In Flagg vs. Mann, 2 Sumner Rep. 486, Story J. says: "Very little reliance ought to be placed upon loose conversations, or admissions of the party to overbalance his solemn denial on oath in his answer." In this case the admissions were not only contradicted by Coleman's answer, but so far as they tended to prove actual possession of the house and lot delivered to Purcell, were positively not true, for the very same evidence shows that actual possession never had been taken of the property in question under the agreement, by either of the parties. Besides, possession is a fact which is always capable of direct proof by eye witnesses who knew it, if it be a fact. Nor is this a case in which Coleman would be estopped to deny the truth of his admissions, if he had ever made such, for these admissions were never acted upon as true by any other party. No one had been induced to purchase his claim from Purcell by hearing them, nor had Purcell himself been encouraged by them to expend any money upon the property.

So far as the admissions relate to the agreement for exchange of properties, it is well settled, they are not admissible in evidence; otherwise it would always be competent to set up a valid parol contract in the courts, in defiance of the statute. No admission of the agreement itself will be received, unless it be in writing and signed by the party himself or by his agent who has been authorized in writing. And this by the statute, to prevent perjuries in setting up parol agreements. How then can evidence be admitted of the admission of the fact of part performance by the party to be charged? If proof of the admission of the agreement itself be not admissible, for the same reason, admission of

the part performance is not capable of proof by parol for the same witnesses who would perjure themselves to prove the admissions of the agreement would in this case do the same thing by proving the party's admissions that it had been partly performed, and thus the verbal agreement would be established with the small additional circuity of two facts instead of one, proved by parol evidence of the party's admissions.

Now, it is an elementary principal in the law of evidence that "the Court will not receive admisions by which any of the principles of law are evaded. Thus, when the husband was willing that his wife should be examined as a witness in an action for malicious persecution, Lord Hardwick refused to permit it, because it was against the policy of the law. Admissions by infants, and admissions evasive of the stamp laws, have been disallowed on the same general principles." 3 Greenl. Ev., sec. 289. Under our act of Congress for raising revenue all deeds, &c., are required to be stamped; otherwise they are void. How would a complainant be received in a court of equity who had no stamp upon his deed or agreement, but who claimed a title at the hands of the Court by proving that defendant had admitted verbally that he had made a verbal agreement, and had put the other party in possession under it. That would be an evasion of the act, and the admissions would be rejected both as to the agreement and the part performance because they were only admissions.

It cannot be denied, however, that courts of equity have permitted the statute of frauds and perjuries to be evaded, and have received parol evidence of the possession and expenditure of money upon land, to make out a case for relief by the decree of specific performance.

It is thought, however, that no case can be found in which this relief has been decreed upon the sole admissions of the defendant made casually and not in writing. The

fact of possession is one which, if it be a fact, is always susceptible of proof by those who have seen it. If it has not been seen it may be safely inferred it has not existed. Since then no authority has been shown for the admission of the evidence which has been taken in this case, from all the great number of cases which have accrued under this statute, reason and good policy alike require that it should not be admitted or considered now.

I will say, with Chancellor Kent in Philips *vs.* Thompson, "I agree with those wise and learned judges who have declared that the Courts ought to make a stand against any further encroachment on the statute, and ought not to go one step beyond the rules and precedents already established."

It has been seen that Purcell was a wrong-doer from the 22d of January, 1861, when he first had Coleman turned out of his house by the two justices. His status for the purposes of this cause is to be treated as fixed by that transaction. Of course he can have no greater or better claim in equity against Miner than he had against Coleman. At the time Mrs. Miner bought from Coleman (the 9th of March, 1861) she no doubt had full notice of the character of Purcell's claim to the property, but that can do Purcell no good, for if she had the notice, that notice informed her at the same time, that his claim was worthless and he a wrong-doer. It is not like the case of notice to a party of an unrecorded but valid deed; but it is like the case of notice to a purchaser of an unrecorded and void deed.

Purcell having paid off an incumbrance upon the property and taken an assignment of the security, holds that claim which will be the subject of the set-off against Miner's claim for the *mesne* profits from the date of her purchase till the date of her recovery of the possession, probably in some other suit, unless otherwise settled.

It is absurd to assert that the assignment of that debt and security vests in Purcell the legal title.

The legal title is in the trustees, who hold it to secure the debt which Coleman owed the Jackson Building Association, and which that association has assigned together with their interest in the security to Purcell. Purcell further alleges that he is the holder of a tax title to the property in question and claims to have specific performance decreed him on that gound also.

But he has neither shown his deed from the corporation, not any of the proceedings at the alleged sale, nor made any proofs on the subject. If he had done all this, it is not probable this Court would have taken up that subject or permitted it to affect its decision in this suit.