## GRAHAM V. SELBIE *et al.*

1. In order to establish a resulting trust under Comp. Laws, Sec. 2796, providing that when real estate is transferred to any person, the consideration being paid by or for another, a trust is presumed to result in favor

of the person by or for whom such payment is made, the payment by or for one who seeks to enforce the trust must be established by substantial proof that the money was actually used for the purchase of the property with the intention that the title should be taken in trust.

2. Where an application to the county court for an order directing that the personal representative of a decedent should convey to plaintiff certain lands was denied without prejudice, on the ground that the applicant's right to a deed was doubtful, such determination did not disqualify the judge (who afterwards became judge of the circuit court) from hearing and determining the action brought by such applicant to establish a resulting trust in the lands in controversy.

3. Defendant's intestate purchased certain lands, the deeds being placed in escrow to await the payment af the price. Under an arrangement with plaintiff, defendant's intestate drew upon him for the price of the land, depositing the proceeds of the draft in a bank to his own credit, in partial extinguishment of a large overdraft. The money was not paid over for the purchase of the land until nearly 18 months had elapsed. *Held*, that the evidence was insufficient to show that the consideration for the land was paid by plaintiff, within the meaning of Comp. Laws, Sec. 2796, providing that when real estate is transferred from one person, the consideration being paid by or for another, a trust was presumed to result in favor of the person by or for whom such payment is made. CORSON. P. J., dissenting.

(Opinion filed June 17, 1896.)

Appeal from circuit court, Lawrence county. Hon. A. J. PLOWMAN, Judge.

Action to establish a resulting trust and to compel the conveyance of certain real estate. Defendants had judgment, and plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*Edwin Van Cise*, for appellant.

The trial judge was disqualified. Curtis v. Wilcox, 41 N. W. 863; State *ex rel.* Routh v. Burks, 18 S. W. 661; Howell v. Budd, 27 Pac. 747; State *ex rel.* Ambler v. Hocker, 15 So. 581; O'Connell v. Gavett, 7 Colo. 40; Kern Valley Water Co. v. McCord, 70 Cal. 646; Moses v. Julian, 45 N. H. 52; S. C. 84 Am. Dec. 114; Pister v. Hatfield, 46 N. Y. 249; Turner v. Hitchcock, 20 Ia. 310; Allerton v. Eldridge, 56 Ia. 709; Ryan v. Boyd, 7 Wis. 134; Runals v. Brown, 11 Wis. 193; Goodno v. Oshkosh, 31 Wis. 127.

An agent or servant whose compensation is measured by a certain portion of the profits is not thereby made a partner. Meehan v. Valentine, 145 U. S. 608; Berthold v. Goldsmith, 24 How. 536; London Ass. Co. v. Drennen, 116 U. S. 461; Beckwith v. Talbot, 93 U. S. 289; Musser v. Brink, 68 Mo. 242; Donnell v. Harshe, 97 Mo. 170; Clifton v. Howard, 1 S. W. 26; Clark v. Barnes, 34 N. W. 419; Loomis v. Marshall, 12 Conn. 69; Chase v. Barrett, 4 Paige 147.

"When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." Comp. Laws, § 2796. Under the same statute in California, see, Hellman v. Messmer, 16 Pac. 766; Hidden v. Jordan, 21 Cal. 93; Bayles v. Baxter, 22 Cal. 575; Millard v. Hathaway; 27 Cal. 119; Currey v. Allen, 34 Cal. 254; Jenkins v. Frink, 30 Cal, 586; Osborne v. Endicott, 6 Cal. 149; Walton v. Karnes, 7 Pac. 676; Barroilhet v. Anspacher, 8 Pac. 8044; see, also, Taylor v. Miles (Ore.), 25 Pac. 143; Reynolds v. Sumner (Ill.), 14 N. E. 661; Kluender v. Fenske (Wis.) 10 N. W. 370; Jackson v. Miller, 6 Wend. 228; Strimpfier v. Roberts, 18 Pa. St. 383.

*Martin & Mason*, for respondent.

The court properly declined to call in another judge to try the case. 12 Am. & Eng. Encyc. of Law, pp. 40, 52, 54, 55; Const. So. Dak., Art. 5, § 29; Comp. Laws §§ 4888, 4890, 4891, Subd. 2, 5658, 7312; State v. Palmer, 4 S. D. 543, 57 N. W. 490; Laws 1890, Ch. 79; State v. Chapman, 1 S. D. 414; State v. Rodway, 1 S. D. 575; White v. C. M. & St. P. Ry. Co., 5 Dak, 508; Walters–Pierce Oil Co. v. Cook, 26 S. W. 96; Fry v. Bennett, 28 N. Y. 324, 329; McDonnell v. Van Dusen, 12 Johns (N. Y.) 356; People v. Williams, 24 Cal. 31.

The law of resulting trusts. See White v. Carpenter, 2 Paige Ch. 217, 265; Bank v. Kimball Milling Co., 1 S. D. 388; 47 N. W. 404; St. Johns v. Benedict, 6 Johns. Ch. 111, 116; Byers v. Danley, 27 Ark, 89; Irving v. Marshall, 7 Minn. 286;

10 Am. & Eng. Encyc. of Law, pp. 13 and 15; Baples v. Bax-
ter, 22 Cal. 575, 580; 2nd Pom. Eq. Jur., § 1037 and note; Ol-
cott v. Bynum, 17 Wall. 44, 60; Decker v. Decker, 108 N. Y.
128, 136; Niver v. Crane, 98 N. Y. 40, 47, 49; Parsons v. Phe-
lan, 134 Mass. 109; 10 Am. & Eng. Encyc. Law, p. 11, note 2;
1 Perry on Trusts (2nd Ed.), § 135; Sheldon v. Harding, 44
Ill. 68, 73; White v. Sheldon, 4 Nev. 280 and 293; Appeal of
Walter, 8 Atl. (Pa.) 506, 412; Bailey v. Hemenway, 145 Mass.
326; Hadley v. Stewart, 62 Iowa 267; Flickett v. Durham, 109
Mass. 419, 422; Buck v. Swazy, 35 Me. 51; Comer v. Lewis, 4
Shepley 274.

FULLER, J.    This action, to establish a resulting trust, and
compel the personal representatives of James K. P. Miller, de-
ceased, to convey to plaintiff certain real estate in the city of
Deadwood, designated as the Merrick property or lots, is based
upon the claim that plaintiff, through the agency of said Miller
purchased and paid for said property on or about the 28th day
of November, 1888, and that the deed and transfer thereof were
made by the grantor, Albert W. Merrick, to James K. P. Mil-
ler, who took the title in his own name, and intended to convey
the same to plaintiff, which said Miller, in his lifetime, failed
and neglected to do.    A trial to the court without a jury, re-
sulted, at the conclusion of plaintiff's evidence, in a judgment
dismissing the cause, and for costs, in favor of the defendant
Selbie, who, as administrator of the insolvent estate of James
K. P. Miller, deceased, alone contested the action.

Prior to the commencement of this suit, an application was
made, pursuant to Sec. 5871 of the Compiled Laws, to the
county court, for an order authorizing and directing the per-
sonal representatives of James K. P. Miller, deceased, to con-
vey to appellant the property in controversy; and, upon the
ground that his right to a deed was doubtful, appellant's peti-
tion was denied, without prejudice to this suit, which is au-
thorized by Sec. 5876 of the Compiled Laws, where a county

court is not satisfied that a claimant is entitled to a conveyance. Upon the ground of disqualification, for the reason that the judge of the county court before whom the petition was heard, and by whom the same was dismissed, had, subsequent to the commencement of this action, become the judge of the circuit court in which said action stood for trial, an application was made for an order transfering the same to a trial calendar of causes then being prepared for hearing and determination before his honor, Judge WILLIAN GARDNER, of the Seventh judicial circuit and appellant assigns as error the ruling of the court in denying said motion.

As generally understood, and in contemplation of the statute, there was in the county court no judicial determination of the issues of law and fact involved in this suit. The hearing in county court may be entirely upon *ex parte* affidavits, and unless the right to a deed appears therefrom to the satisfaction of said court, the judge thereof must dismiss the petition, without prejudice to proceedings in a court authorized to hear and determine the case in an orderly manner, and upon its merits. Sec. 5876, *supra.* As the tribunal before which the case was pending was neither disqualified under the statute or common law, nor shown to be prejudiced or biased in any manner, the application for a change of judges was properly denied. If a previous knowledge of the facts presented in another forum, over which a judge has presided, and an opinion as to the law applicable thereto, disqualifies him in cases like the present, statutory provisions relating to new trials and rehearings fall far short of the beneficial object sought to be accomplished by their enactment. To the effect that an objection to the hearing of a cause before a judge who has tried the case upon a former occasion is frivolous and without merit, see Fry v. Bennett, 28 N. Y. 324; Oil Co. v. Cook, (Tex. Civ. App.) 26 S. W. 96; McDowell v. Van Deusen, 12 Johns. 356; People v. Williams, 24 Cal. 31. The presumption prevails that the judiciary can and will divest itself of all previous conceptions as to the rights of

litigants, and, upon the trial of a cause, conform its views to the facts adduced, and base its decision upon the law applicable thereto.  As there is an absence of anything tending to overcome this presumption, the ruling of the trial court complained of cannot be disturbed, and we will proceed to an examination of the evidence offered in support of the complaint.

On the 25th day of September, 1888, Mr. Miller, who appears to have been extensively engaged in the real estate business, entered into a contract for the purchase of the Merrick property, $5,000 being the consideration agreed upon and mentioned in a warranty deed thereupon executed by the grantors to said Miller, and delivered in escrow to the First National Bank of Deadwood, together with an agreement between Merrick and Miller for its delivery to the latter, or to anyone whom he might designate, on or before November 10, 1888, on payment of the purchase price in the manner therein specified. After numerous extensions obtained by Mr. Miller from time to time, the deed thus placed in escrow was, upon payment of the consideration, delivered to him on the 27th day of March, 1890, about one year and four months after the expiration of the time within which he had originally agreed to conclude the transaction.  In order to extend this escrow agreement Mr. Miller paid at one time (November 1, 1889,) $250, and again, March 14, 1890, $25, which sums were finally placed to his credit and deducted from the purchase price of the property.  On or about January 13, 1891, Mr. Miller departed this life, and appellant was not called as a witness at the trial.  The testimony measurably relied upon consists of certain letters written by Mr. Miller, entries made in his books, and a contract with reference to the property, bearing his signature and that of appellant, which was offered and received in evidence.  A. W. Coe, who acted as Miller's bookkeeper and confidential clerk during all the negotiations relating to the property in dispute, was sworn as a witness, and identified, in addition to the foregoing exhibits, certain drafts and telegrams, which were also placed in evidence by counsel for appellant.

610          GRAHAM v. SELBIE et al.

Opinion of the Court—FULLER, J.          [8 S. D.

The evidence received, whether considered independently of or in connection with that offered by appellant's counsel and rejected by the court, tends to support the inference that shortly after the execution of the deed to Miller, and the delivery thereof in escrow, Mr. Miller, for the first time, entered into an agreement with appellant, by which the latter advanced $5,000 with which to pay for the property. Accordingly, on the 27th day of November, 1888, Miller made a draft for and obtained from appellant, "on account Merrick property," $5,000, which sum thereupon was credited at the Deadwood bank, and used in partial extinguishment of a large overdraft, then existing in favor of the bank, and against said Miller, who appears to have been in financial embarrassment. On the same day the contract above mentioned was forwarded in duplicate to appellant, inclosed with a letter in part as follows: "I have bought the Merrick property, and drawn for the $5,000, and inclose contract concerning same. Deeds, abstracts, etc., will follow in due course. Please sign the contracts, if all right. Have two witnesses attest your signature, and return one to me. * * * I do not want the 10 per cent rate between you and I to be known to anyone, as I have only one rate to all others, and that is 8 per cent, and I do not want anyone to be dissatisfied." Although it is not shown that the contract was executed by appellant during the life of Mr. Miller, or that it ever became a binding obligation, the recitals thereof disclose, at least, his present intention with reference to the property, which, when considered with all the other evidence, tends to repel the theory of a resulting trust. The deed appears to have been executed to Miller, in whose name the legal title still stands of record, before appellant was advised of the existence of the property. Whether rightfully or wrongfully, Miller used the $5,000 to pay a personal obligation, and no part thereof ever went into the purchase of the Merrick property. Though the purported contract declares that appellant "is seised in fee," and therefore the absolute and fee-simple owner of said

property, that instrument was executed by Miller while the deed to him was in escrow, and long before any part of the consideration had been paid. By the terms of the contract, Miller was to have the exclusive management of the property, to lease the same to suitable tenants, collect rents, pay the taxes, and make all necessary repairs upon the buildings, and, in consideration therefor, to receive one-half of the income thus realized, after deducting therefrom said expenses and 10 per cent annual interest on the $5,000, to be paid monthly by Miller to appellant. In case of a sale, the parties were to share the profit or loss equally. If at any time, from any cause, the property should produce no income, Miller was to pay appellant during such time 5 per cent semi-annual interest upon the $5,000 advanced; but, in any event, each party was "to pay in cash, when due, one-half of all insurance, taxes, and necessary repairs while the [property] shall remain unoccupied. And it is further agreed that all money realized from the sale of any part of said property shall be remitted to said Charles H. Graham, and be by him credited upon the said sum of five thousand dollars in liquidation thereof, thereby relieving the said James K. P. Miller from the payment of said interest on the amount or amounts so credited thereon. And it is hereby further agreed that if any building or structures shall be erected upon said lots of land, or any of them, by the said Charles H. Graham, that he, the said Charles H. Graham, shall receive interest on the whole cost thereof, at the same rate, and at the same time, and in the same manner, as is hereinbefore provided to be paid on said purchase price of five thousand dollars." In addition to the payment of interest upon the $5,000, Miller retained the record title to the property in his own name, and, from a sale of a portion thereof, actually paid to appellant one-half of the principal sum. Moreover, it appears that he paid the recording fees and the expense of repairing, removing, and improving buildings upon the property. There appear to be no letters, telegrams, methods of doing

business, or entries in the account current with reference to the property, as disclosed by the books kept by Miller, nor in the entire record any evidence which seems to be materially inconsistent with the view that a relation existed between the parties with reference to the property similar to that suggested by the contract which Miller executed, and forwarded to appellant for his approval and signature, but which never appears to have been executed and returned as directed. That appellant, as the exclusive owner, is entitled to a deed, because the property was bought for him, and with his money, by Miller, whose duty and intention it was to thus convey the same, is' the theory upon which the complaint was drawn and the action brought, under Sec. 5876 of the Compiled Laws, to compel the personal representatives of said Miller to perform that duty in compliance with such intention. By Sec. 2796, a resulting trust is defined as follows: "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

In order to create a resulting trust, appellant's money advanced at or before the purchase of the property must have been paid therefor to Merrick by Miller for and on behalf of appellant, under circumstances sufficient to show that appellant was in fact the owner, and to support a presumption that the parties intended to impress that character upon the transaction. Farmers' & Traders' Bank v. Kimball Milling Co., 1 S. D. 388, 47 N. W. 402; Case v. Coddings, 38 Cal. 191; Olcott v. Bynum, 17 Wall. 44. Knowledge upon the part of appellant that the legal title was not in him, as suggested by the contract, may be inferred from the fact of a sale and transfer by Miller of a portion of the property, the proceeds of which were remitted to appellant, and applied in partial extinguishment of the $5,000 upon which Miller was at the time paying interest; and this circumstance when considered with the fact that Miller retained the legal title and exclusive management of the property to the

day of his death, is inconsistent with the view that no interest or estate beyond the naked legal title was vested in him, and that he intended to deed the premises to appellant. Payment by or for one who seeks to enforce a resulting trust must be established by substantial proof that his money actually went into the purchase of the property, the deed to which was taken in the name of another, with the intention that the legal title was thus taken in trust for the owner. Fickett v. Durham, 109 Mass. 419; Kendall v. Mann, 11 Allen. 15; 1 Perry Trusts (4th Ed.) 133. Says Mr. Pomeroy: "There must be no pecuniary consideration coming from the grantee, for such a consideration would raise a trust in his own favor, and clothe him with a beneficiary interest." 2 Pom. Eq. Jur. 1033.

The evidence in this case would constitute a defense to an action for the recovery of the money advanced by appellant to Miller, upon no other theory, if at all, than that the parties had entered into some kind of a joint or partnership venture, by which each had acquired an interest in the premises in controversy; and, as none of the essential elements of an implied or resulting trust were established at the trial, the court was, in the absence of an application to amend the complaint, fully justified in dismissing the action. Whether the conduct of Miller in his lifetime, and his acts with reference to the property, considered in the light of his relation thereto and to appellant, would, in view of all the circumstances, impress the property with the character of an express trust, coupled with an interest or a constructive trust on account of fraud, of which there is no allegation, it is not now necessary to determine. There were in the admission and rejection of evidence no errors of which appellant has a right to complain. Manifestly, as no case was proven, within the provisions of Sec. 5097 of the Compiled Laws, that is "consistent with the case made by the complaint, and embraced within the issues," the judgment of dismissal and for costs must be affirmed; and it is so ordered.

CORSON, P. J. (dissenting). As I am of the opinion that the evidence in this case establishes the fact that Graham's money paid for the Merrick property, and that Miller therefore held the legal title to the same in trust for Graham, I am unable to concur in the conclusions reached by my associates. On November 22, 1888, Miller wrote Graham: "I will close the $5,000 [deal] tomorrow, and draw for same." This evidently refers to the Merrick property, as Mr. Coe, Mr. Miller's confidential clerk, testifies that he knew of no other $5,000 property bought by Miller for Graham. On the 28th of the same month Miller wired Graham: "Have drawn for $5,000 account of Merrick property." This draft was paid, and the proceeds were used by Miller for a year or more, but were ultimately applied, as I view the evidence, to the payment for the Merrick property, and the Merrick deed taken out of escrow, and recorded. The fact that Miller used the proceeds of the draft until the money was required to take from escrow the Merrick deed does not, in my view of the law, affect the nature of the transaction, so long as the money was in fact applied to the payment of the consideration for that property.

The fair inference from the evidence is, it seems to me, that Miller had negotiated for this property, and had taken a deed to himself in escrow, and then arranged with Graham to take the property, and pay for the same, but with the understanding that Miller should have a share in the profits for his services in purchasing and looking after the same, when the property should be disposed of by Graham. It seems also quite clear from the evidence that, owing to difficulties in perfecting the title and various delays, the escrow was not taken up until March, 1890, and that in the meantime Miller, who seems to have been a large operator, kept the money of Graham with his general account at the bank, and treated it as any other deposit, until he required the money to take the deed from escrow, when the Graham money, it seems to me, was used for that purpose. It does not occur to me that the fact

that the proceeds of the Graham draft were retained and used by Miller for over a year in his business affects the question as to whose funds actually paid the consideration for the property. It will be noticed that the property was not paid for until the deed was taken from escrow, in March, 1890, except some small amounts to retain the deed in escrow; and then the balance of the $5,000 was drawn and paid upon the property. As I view the transaction, that payment was made with the Graham money or proceeds of the Graham draft. Suppose Miller had sealed up the proceeds received from the Graham draft, and made a special deposit of it in some bank, until he was ready to take the Merrick deed from escrow, and then had opened and taken from the package this $5,000, and paid for the property; could there be any doubt that Graham's money paid for the property, and that Miller would hold the legal title as trustee for Graham? We apprehend not. Then, why would the fact that Miller kept the money with his own on deposit, and used it, until he required it to pay for the property, make any difference? The money received by Miller, and credited to him on his account at the Deadwood bank, on his draft drawn on Graham, was no more the identical money furnished by Graham than the money he eventually paid for the property, in March, 1890. Miller had in his hands, in contemplation of law, from November, 1888, to March, 1890, this $5,000 advanced by Graham to pay for this property; and, when he paid the $5,000 for the property, it was as much Graham's money as though he had paid it on the very day he received credit for it at the bank. This seems to me to be the proper view to take of this transaction. If I am correct, and the consideration for the property was in fact paid by Graham or for him, the case comes clearly within the provisions of Sec. 2796, Comp. Laws, copied in the opinion of the court.

Respondent contends that the contract between Miller and Graham should have a controlling influence in determining this case, and such seems to have been the view of my associates.

But whether that contract was or was not executed so as to make it a binding contract in Miller's lifetime, it does not seem to me to materially affect this case. By this contract, Miller distinctly admits that the property belonged to Graham, and the contract seems to have been drawn upon the theory that the legal title was actually vested in him. Undoubtedly, Miller expected, when the contract was prepared, that the Merrick deed would be taken out of escrow at once, and the title transferred by him to Graham. But, as we have seen, delays occurred in order to enable Merrick to perfect his title, and the transaction was not closed up until March, 1890. Possibly, if the contract was in fact executed, Miller's representatives may have a claim against Graham, when the property is finally disposed of for a share of the profits of the transaction, as was held by the supreme court of the United States, in constructing a similar contract in Seymour v. Freer, 8 Wall. 202. But that question is not involved in this case, as the issue under the pleadings is, was the $5,000 received by Miller from Graham applied to the payment of the Merrick property? I think it was, and that Miller held the naked title trust for Graham, and that Graham is entitled to a conveyance of the property. Holding this view, I am of the opinion that the judgment of the court below should be reversed.