## HENRY v. HODGES.
### No. 56, Docket 21086.

United States Court of Appeals
Second Circuit.

Nov. 29, 1948.

Frederick Bernays Wiener, of Washington, D. C., John F. X. McGohey, U. S. Atty., of New York City, T. Vincent Quinn, Asst. Atty. Gen., Thayer Chapman, Major, Judge Advocate General's Department, U. S. Army, of Washington, D. C., and Bertram Schwartz, Judge Advocate's Office, Headquarters First Army, of New York City (John F. Ryan, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Emil Morosini, Jr., of New York City, Robert N. Gorman, of Cincinnati, Ohio, and Henry C. Ruttiger, of Newark, N. J., for appellee.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

L. HAND, Chief Judge.

The respondent, who has custody of Henry, the relator, under a judgment of conviction of a general court martial, appeals from an order, releasing Henry upon habeas corpus. Only two questions are at issue: (1) Whether Henry was deprived of that "thorough and impartial investigation," preliminary to convening a "general court martial," which the Seventieth Article of War,[1] affords; and (2) whether the "general court martial" before which he was tried was improperly constituted under the Eighth Article of War,[2] because the "law member" was not "an officer of the Judge Advocate General's Department." The district judge held with the relator on the first point, and with the respondent on the second; he has stated the underlying facts in an opinion,[3] and we need not repeat them here, but will proceed at once to discuss the issues they raise.

We shall not decide whether the "thorough and impartial investigation," prescribed by the Seventieth Article of War, is a condition upon the jurisdiction of

---

[1] § 1542, Title 10 U.S.C.A.
[2] § 1479, Title 10 U.S.C.A.

[3] D.C., 76 F.Supp. 968.

a "general court martial" such that its absence is a defect of jurisdiction, which exposes a subsequent conviction by the court to attack by habeas corpus. A majority of the Third Circuit has recently so held,[4] and we shall assume arguendo that they were right. What we do decide is that, when the accused has had the substance of that protection which the statute intended him to have, formal defects do not touch the jurisdiction of the court.

Before the charges were filed, Captain Meyers made an extended investigation of the occurrences in question. He examined a number of statements of witnesses taken by Captain Stavor; some of these witnesses he himself examined; some additional witnesses he examined on his own account; and he interviewed Henry personally at length. All this material he put together in a preliminary report, which, had he made it up after the charges were preferred, would have answered all the requirements of the Seventieth Article, as a "thorough and impartial investigation." However, he did not prepare it to be such an investigation, and his findings were tentative; it was only after the charges had been verified and filed, that he made that final report whose sufficiency is now challenged. The first question is whether he was disqualified in this because of his preliminary report with its tentative conclusions.

▮ There is no inherent reason to deny power to a judicial officer to review his own judgments, even though they be final and decide the very merits of the cause; at common law this was permissible.[5] True, it has long been the custom to forbid it by statute and there are good grounds for so doing; but it still persists in the practice of bringing on a motion for a new trial for errors of law before the judge who made the original decision. Rightly or wrongly, judges are credited pro tanto with enough detachment to be able to re-examine impartially what they have done; at least when, as here, the final disposition will in the end be determined by others. There is not a syllable to support the conclusion that in this case Captain Meyers was unwilling to reconsider the conclusions to which he had come before; and we can see no reason to suppose that in result the "post-charges" report did not comply with the statute. Indeed, so far as Henry has any complaint whatever, it is not to that there never was that "thorough and impartial investigation" which must precede the convening of a general court martial, but that there had been no separate "investigation" preliminary to the preferring of charges against him. The Seventieth Article provides that the charges "must be signed by a person * * * under oath either that he has personal knowledge of, or has investigated, the matters set forth therein, and that the same are true in fact, to the best of his knowledge and belief." Another officer than Meyers verified the charges in question, and, although he probably did so with Meyers' "pre-charges" report before him, there is no reason to assume that the "investigation" which he was charged with making, may not have been of the exhibits which were attached to Meyers' report rather than upon the bare report. We should have no warrant for assuming the contrary, or for holding that the charges were not regular.

▮ Moreover, the issue is not in the case anyway, for Henry assented to the "post-charges" investigation without reserve. After Meyers had filed his preliminary report, after the charges had themselves been filed, and after he had been ordered to make the "post-charges" investigation, he showed his preliminary report to Henry, containing as it did the twelve exhibits which fill eighty-four typed pages and which contained everything he

---

4 Smith v. Hiatt, 170 F.2d 61.

5 Fink v. Tod, 2 Cir., 1 F.2d 246, 249, 250; Pierce v. Delamater, 1 N.Y. 17; Oakley v. Aspinwall, 3 N.Y. 547, 553 (semble); In re Carter's Will, 193 App. Div. 356, 358, 184 N.Y.S. 40; In re Mavroidi's Estate, Sur., 60 N.Y.S.2d 344; Forde v. Commonwealth, 16 Grat., Va., 547, 551, 552; Burguieres v. Farrell, Tex.Civ.App., 85 S.W.2d 952, 956; Galveston & H. Inv. Co. v. Grymes, 94 Tex. 609, 64 S.W. 778; Graham v. Selbie, 8 S.D. 604, 67 N.W. 831; Edwards v. His Wife, 9 La.Ann. 321.

had acted upon, and meant to act upon again (the testimony, the statements and the documents). He asked Henry whether he wished "to cross-examine any witness," and Henry said he did not; he named nine witnesses specifically whom he suggested that he might call, and he asked Henry whether he wished to cross-examine any of these, and Henry said he did not; finally, he asked Henry whether he wished to make any further statement of his own, and Henry said that he did not. It was only after this that he made the report on which the general court martial was convened. That was dated October 29th; and two days later he made a second report, more in detail, showing that he had gone over the ground again and repeating that Henry did not wish to make any "statement," although he had said that he meant to call four witnesses in his defense at the trial. Henry did not deny that he had been shown the preliminary report with its accompanying exhibits, or that he had not wished to cross-examine the witnesses, or that he had not refused to make any added statement on his own behalf. He did swear that he had asked Meyers to call four witnesses at the hearing under the Seventieth Article, and that Meyers refused; but Meyers denied this, and the court found against Henry. That finding concededly we should not reverse.

It is on such a showing that we are asked to hold that the substance of the protection which the Seventieth Article provides was so far denied Henry that the court martial had no jurisdiction to proceed. Chief Judge Biggs in Hicks v. Hiatt,[6] held that, where the cumulation of incidents in a trial persuasively shows that the accused has been denied a fair trial, the conviction should be reversed, as wanting "due process of law." We do not mean to suggest that this is not a ground for declaring that the court did not have jurisdiction of the case; but here there was no shadow of oppression or of denial of "due process of law"; there was nothing which by any possibility could have prejudiced Henry in his defense. Unless we are to treat every procedural defect, however trivial, as impairing the jurisdiction of the court, this is no case to intervene.

■ There remains the second question: The irregularity in the constitution of the court: i. e., whether any member of the Judge Advocate General's Department was "available" at the time. We cannot say that it was not more in the interest of justice to detail Beatty to defend Feltman than to put him on the court; or that it was not better judgment to make Swan a prosecutor than a judge: and these were the only officers of the Department whom Henry claims to have been "available." The whole question is especially one of discretion; and, if it is ever reviewable, certainly the record at bar is without evidence which would justify a review. The commanding officer who convenes the court must decide what membership will be least to the "injury of the service," and what officers are "available." "Available" means more than presently "accessible"; it demands a balance between the conflicting demands upon the service,[7] and it must be determined on the spot.

Order reversed; writ dismissed.

6 D.C., 64 F.Supp. 238, 240.

7 Martin v. Mott, 12 Wheat. 19, 6 L.Ed. 537; Mullan v. United States, 140 U.S. 240, 11 S.Ct. 788, 35 L.Ed. 489; Swaim v. United States, 165 U.S. 553, 17 S.Ct. 448, 41 L.Ed. 823; Bishop v. United States, 197 U.S. 334, 25 S.Ct. 440, 49 L.Ed. 780; Kahn v. Anderson, 255 U.S. 1, 41 S.Ct. 224, 65 L.Ed. 469.