In re KEARNS, Collector.

(District Court, W. D. Pennsylvania.    November 1, 1894.)

OLEOMARGARINE—INSPECTION OF BOOKS OF WHOLESALE DEALER.
   A collector of internal revenue has no authority, under section 3173, Rev. St., to require a wholesale dealer in oleomargarine to produce his books for examination and inspection.

This was a petition by E. P. Kearns, collector of internal revenue for the Twenty-Third district of Pennsylvania, praying for an attachment against C. B. Clark for an alleged contempt in failing to comply with a summons issued to him by the collector, and requiring him to produce for inspection the books, etc., used by him as resident manager for the firm of Armour & Co., wholesale dealers in oleomargarine.

Harry Alvin Hall, U. S. Atty.
D. T. Watson and L. B. D. Reese, for defendants.

BUFFINGTON, District Judge.    During the years 1893 and 1894, Armour & Co. paid an annual tax to the United States of $480, as wholesale dealers in oleomargarine, and as such made monthly returns to the government of the amounts of their sales, with the names of the purchasers.    On October 18, 1894, E. P. Kearns, Esq., collector of internal revenue for the Twenty-Third district of Pennsylvania, being of opinion such returns were false and fraudulent, summoned C. B. Clark, resident manager of said firm, to appear before him to testify "in a certain case arising under the internal revenue laws, depending before me, wherein Armour & Co., wholesale dealers in oleomargarine, who were required as such by law

to render to me certain monthly returns of objects subject to tax, delivered to me returns for the months in the year 1893 and the year 1894, which in my opinion are false and fraudulent," and also to produce "each and every ledger, day book, cash book, blotter, sales book, journal, dray ticket, and other memoranda used by you or in connection with your business as manager for Armour & Co., as wholesale dealers in oleomargarine for and during the years 1893 and 1894, relating to the subject-matter of the said investigation." Clark failed to comply with this order, whereupon the collector presented a petition to the judge of the district court, praying for an attachment against him as for a contempt. To the rule issued thereon, Clark made answer expressly denying that the returns made by Armour & Co. were false and fraudulent, and contending that Armour & Co. have kept all books required by law, and that these are open to the inspection of the revenue officers; that they object to producing their private books, showing rates of sales, as an invasion of private rights; that the collector has no authority "to compel the production of the private books of wholesale dealers in oleomargarine in a proceeding like the one at bar"; that Armour & Co. have paid all their taxes as wholesale dealers, and the taxes on all oleomargarine sold by them have also been paid; that the present proceeding was not to settle or fix any tax against them, but "that he [the collector] and his assistants may search those books to attempt to obtain evidence to be used against third parties in proceedings against them, or some of them, for the sale of oleomargarine in alleged disregard of the acts of congress"; and, lastly, if the allegations of the collector were true, and the returns were false and fraudulent, Armour & Co. would be subject to fine and forfeiture, and, if the collector is given power by act of congress to compel them to produce papers, it is in violation of the fourth amendment to the constitution. The matter was heard on petition and answer, no proofs being submitted. It is not contended that Armour & Co. have not paid all taxes assessed against them, or that they have sold oleomargarine upon which the taxes were not paid, but it is stated at bar by the counsel for the government that the collector suspects the real names of purchasers of oleomargarine from them have not been given by Armour & Co. in their monthly returns, and as a result the government has been unable to collect taxes from persons buying from them, and afterwards retailing it; that the purpose of the returns from wholesalers is to furnish this information; and he asserts the collector's rights to inspect the respondents' business books to ascertain these facts, and the present proceeding is had to compel the production of the books for that purpose.

The question presented is one of grave moment. It is earnestly contended that such an inspection is lawful; that it is necessary for the efficient administration of the revenue service, and the collection by the government of its just dues; that only dishonest men will object to its allowance; that the honest one has nothing to fear from such an examination. But this is begging the entire question. Books and papers are the private and absolute prop-

erty of the owner, or, as Lord Camden said in Entick v. Carrington, 19 How. St. Tr. 1066:

"Papers are the owner's goods and chattels. They are his dearest property, and are so far from enduring a seizure that they will hardly bear an inspection."

In Re Pacific Railway Commission, 32 Fed. 241, Justice Field said:

"Of all the rights of the citizen, few are of greater importance, or more essential to his peace and happiness, than the right of personal security; and that involves, not merely protection of his person from assault, but exemption of his private affairs, books, and papers from the inspection and scrutiny of others. Without enjoyment of this right, all others would lose half their value."

So highly was this right to one's papers esteemed that, within certain limits, it was preserved from legislative action in the constitution,—the fourth amendment,—"the right of the people to be secured in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." The exclusive possession of them is reckoned one of the absolute rights of the citizen. Such possession is not to be invaded, save for proper cause; and any individual, public or private, who seeks to invade it, must have the warrant of legal authority for so doing. If no such warrant can be found, the silence of the books is an unanswerable argument against the validity of the claim. Nor should such claim rest upon mere implication or analogies. The absolute rights of the citizen remain absolute until the law, by as absolute and certain provisions, abridges those rights.

Applying these fundamental principles to the case in hand, we may say that the books in question are the private property of the respondents; and no one can take them from their custody, or has a right to inspect them, against their consent, without express warrant of law, and the burden of showing such a right rests on him who claims it. Does such right exist in the collector in the present case? The contention of the government is that by section 3 of the act of 2d August, 1886 (24 Stat. 209), a special tax was imposed on wholesale dealers in oleomargarine; that section 41 of the act of 1st October, 1890, provided for their keeping such books and making such returns as might be prescribed by the commissioner of internal revenue with the approval of the secretary of the treasury; that such regulations were prescribed 12th March, 1891 (Internal Revenue Regulations, ser. 7, No. 9, p. 44), as follows:

"Wholesale dealers in oleomargarine will make monthly returns on form 217, showing in detail the serial numbers of packages and number of pounds of oleomargarine received direct from manufacturers and other wholesale dealers, also the quantity disposed of, with the name and address of each person to whom sold or returned."

It is then contended: That wholesale dealers in oleomargarine, making these returns, are subject to the provisions of section 3173, Rev. St., which provides, in part, as follows:

"And if any person on being notified or required as aforesaid shall neglect or refuse to render such list or return within the time required as aforesaid, or whenever any person who is required to deliver a monthly or other return of objects subject to tax fails to do so at the time required, or delivers any

return, which, in the opinion of the collector, is false or fraudulent, or contains any undervaluation or understatement, it shall be lawful for the collector to summon such person or any other person, having possession, custody or care of books of account containing entries relating to the business of such person, or any other person he may deem proper, to appear before him and produce such books at a time and place named in the summons, and to give testimony or answer interrogatories, under oath, respecting any objects liable to tax or the returns thereof."

That sections 3174, 3175, Rev. St., provide for the service of such summons, and for the application for an attachment to the district judge, in case of a refusal by the person summoned to comply, and that the foregoing constitute a warrant for the action of the collector.

The determination of the present case, in our view, involves three questions (for it is to be noted that Armour & Co. do not claim exemption from the production of their books by reason of the fact that they would tend to criminate them), as follows: First. Does section 3173, Rev. St., apply to wholesale dealers in oleomargarine? Second. If so, is the monthly return required of such dealer, viz. one "showing in detail the serial numbers of packages and number of pounds of oleomargarine received direct from manufacturers and other wholesale dealers, also the quantity disposed of, with the name and address of each person to whom sold or returned," such a one as is contemplated by said section, which provides, "Whenever any person who is required to deliver a monthly return or other return of objects subject to tax fails to do so at the time required, or delivers any return which, in the opinion of the collector, is false or fraudulent or contains an undervaluation or understatement, it shall be lawful," etc.? Third. Do the averments of the petition, with the denials of the answer and the absence of all testimony, afford the satisfactory proof required by section 3175, Rev. St., to warrant the grant of an attachment?

When the act of 30th June, 1864, of which section 3173 is a part, was passed, oleomargarine was not a commercial commodity, or recognized as a subject of possible taxation, if indeed it even existed at that time. It was first made subject to special tax by the act of 2d August, 1886 (24 Stat. 209), which was "An act defining butter, also imposing a tax upon and regulating the manufacture, sale, importation and exportation of oleomargarine." This act was not a supplement or amendment to other revenue legislation, but was a distinct and independent one. It created a complete and comprehensive system in itself, and, by its various sections, regulated the taxation, manufacturing, selling at wholesale and retail, the import and export, of oleomargarine; provided for its analysis; and fixed punishments for violation of its provisions. By section 3 thereof, certain general provisions of the revenue system were extended to the new subject of taxation. After enumerating the persons subject to tax it provides:

"And sections 3232, 3233, 3234, 3235, 3236, 3237, 3238, 3239, 3240, 3241 and 3243 of the Revised Statutes of the United States are, so far as applicable, made to extend to and include and apply to the special taxes imposed by this section and to the persons upon whom they are imposed."

The incorporation of these sections in the oleomargarine law and the omission of section 3173, under which the present proceeding is justified, as indeed also of all the provisions of the act of 30th June, 1864, is highly significant. It is contended that that section is broad and comprehensive in terms, and was meant to apply to all special taxes then existing, or that might thereafter be imposed. Whatever force such contention would have in reference to other laws and other subjects of taxation, it cannot avail when applied to the act of 2d August, 1886. Congress has precluded it by selecting certain special sections, as comprehensive as section 3173, themselves part of the general revenue system, and extending their provisions, and no others, to this new object of taxation. If congress deemed it necessary, to specify such sections of the revenue system, to extend them to oleomargarine, how can its omission to specify and extend section 3173 be considered other than a deliberate declaration that it was not extended? To say otherwise is at variance with the recognized canon of construction, "Expressio unius est exclusio alterius." And that congress recognized the necessity of specifically extending section 3173 to new subjects of taxation imposed by statutes, not supplemental, when it desired to do so, is shown by the amendment of that section by section 34 of the act of 28th August, 1894 (No. 227), so as to cover the income tax imposed by that bill; an amendment, we note, which is here cited by way of illustration only.

After due consideration, we are of opinion that Rev. St. § 3173, does not apply to wholesale dealers in oleomargarine. Such being this case, a discussion of the two other questions is needless, as the present rule must be discharged. And it is so ordered.