In re KINNEY, Collector of Internal Revenue.

(District Court, D. Rhode Island. May 26, 1900.)

INTERNAL REVENUE—OLEOMARGARINE LAW—POWERS OF COLLECTOR.

The provisions of Rev. St. § 3173, authorizing a collector of internal revenue to summon before him for examination any person charged by the law with the duty of making returns of "objects subject to tax," do not apply to persons required under the oleomargarine law to make returns of "materials and products." Such provisions relate only to objects of taxation upon which the tax is collected by the method of return and assessment, and not to those upon which the tax is required to be paid by a stamp, and a collector has no power under section 3173 to compel a person to appear and testify to the correctness of the returns made under the oleomargarine law.

This was a petition by W. Frank Kinney, collector of internal revenue, to the district judge, asking the issuance of an attachment for contempt.

Charles A. Wilson, U. S. Atty., for petitioner.

Comstock & Gardner, for respondent.

BROWN, District Judge. The collector's petition, addressed to the district judge, represents the refusal of Frank M. Mathewson, president of the Oakdale Manufacturing Company (a corporation engaged in the manufacture of oleomargarine), to obey a summons issued by the collector under section 3173 of the Revised Statutes, and prays that, in accordance with the provisions of section 3175 of the Revised Statutes, "an attachment may issue against the said Frank M. Mathewson, directed to the United States marshal of said district, commanding him to arrest said Frank M. Mathewson, and bring him before you, to show cause why he should not be adjudged in contempt, and punished according to law." This summons, as well as a previous summons upon a printed form, contains this clause: "Failure to comply with this summons will render you liable to attachment as for contempt and punishment by the court, as provided by section 3175, Revised Statutes of the United States." A first reading of this section would certainly seem to justify the view which the collector has taken of this statute. And yet it is clear, under the reasoning in Interstate Commerce Commission v. Brimson, 154 U. S. 447, 489, 14 Sup. Ct. 1137, 38 L. Ed. 1061, that if section 3175 does in fact authorize a judge or commissioner to arrest and punish for a contempt of the order of a collector of internal revenue it is unconstitutional and void. In Brimson's Case it was said:

"Of course, the question of punishing the defendants for contempt could not arise before the commission; for, in a judicial sense, there is no such thing as contempt of a subordinate administrative body. No question of contempt could arise until the issue of law in the circuit court is determined adversely to the defendants, and they refuse to obey, not the order of the commission, but the final order of the court."

Section 3175 can be sustained only upon a construction that would make the procedure thereunder similar to that sustained as constitutional in Brimson's Case. I have serious doubts whether it is not a straining of the terms of section 3175 to make it read otherwise

than as a plain direction to the judge or commissioner to "arrest as for a contempt" of the collector, and to punish as for a contempt of the collector a witness who refuses to testify and produce documents before him. The interstate commerce act provided for no summary arrest before hearing on the question of right, and the determination of the right of the commission to the evidence and of the duty of the witness to answer was given to the circuit court, and not to a single judge or commissioner. Upon the present application, however, I do not deem it necessary to decide the questions of constitutionality which have been raised by the counsel for Mr. Mathewson upon the hearing of the order to show cause why a writ of attachment should not issue; for assuming that the collector may now apply for an order to the witness to testify and produce books and documents before the collector, and that for disobedience to this order the witness might be dealt with as for contempt, I am of the opinion that such an order should not be granted, for the reason that section 3173 does not confer upon the collector a right to the testimony of this witness. Mr. Mathewson was summoned to testify "in a certain case arising under the internal revenue laws depending before me [the collector], to wit, the correctness of the monthly returns or reports required by law to be made and made by the Oakdale Manufacturing Company, manufacturers of oleomargarine," etc., "to wit, the returns made by said company between the following dates, January 1, 1896, to and including December 31, 1899; said returns, in my [the collector's] opinion, being false and fraudulent, and containing undervaluations and understatements."

In re Kearns (D. C.) 64 Fed. 481, is a decision directly adverse to the collector's contention. Though that decision related to a wholesale dealer in oleomargarine, and not to a manufacturer, this distinction is immaterial; for the reasoning of the court is equally applicable to the case of a dealer and of a manufacturer. In that case it was held that the act of August 2, 1886, called the "Oleomargarine Law," was not a supplement to or amendment to other revenue legislation, but was a distinct and independent act, creating a complete and comprehensive system in itself, and fixing punishments for violation of its provisions. The title of the act, "An act defining butter, also imposing a tax upon and regulating the manufacture, sale, importation, and exportation of oleomargarine," affords some support to this view. The learned judge dwells chiefly upon the fact that the act itself expressly enumerates in section 3 certain general provisions of the internal revenue laws, to wit, sections 3232-3241, inclusive, as well as section 3243, as applicable to the special taxes imposed by section 3, and to the persons upon whom they are imposed, and omits all reference to other general provisions of the internal revenue laws. The inquiry is then made: "If congress deemed it necessary to specify such sections of the revenue system to extend them to oleomargarine, how can its omission to extend section 3173 be considered other than a deliberate declaration that it was not extended? To say otherwise is at variance with the recognized rule of construction, 'Expressio unius est exclusio alterius.'" A careful examination of section 3173, and a comparison of the re-

turns therein referred to with the returns referred to in the oleomargarine law, to wit, returns of "materials and products;" discloses important differences, and supports the view that section 3173 is not in terms broad enough to extend the inquisitorial powers of the collector to the reports required by regulations made by the commissioner, in accordance with section 5 of the oleomargarine law. Powers such as are conferred by sections 3173 and 3175 are not to be extended by analogy, and must be strictly limited within the express terms of the statutes. Section 3173 provides, among other things, that:

"Whenever any person who is required to deliver a monthly or other return of objects subject to tax fails to do so at the time required, or delivers any return which, in the opinion of the collector, is false or fraudulent or contains any undervaluation or understatement, it shall be lawful for the collector to summon such person or any other person, having possession, custody or care of books of account containing entries relating to the business of such person, or any other person he may deem proper, to appear before him and produce such books, at a time and place named in the summons, and to give testimony or answer interrogatories, under oath, respecting any objects liable to tax or the returns thereof."

The character of the returns to which this section of the statute refers is shown by the first proviso, to the effect that if any person shall fail to exhibit a list or return required by law, but "shall consent to disclose the particulars of any and all the property, goods, wares, and merchandise, articles and objects liable to pay any duty or tax, or any business or occupation liable to pay any special tax as aforesaid, then, and in that case, it shall be the duty of the deputy collector to make such list or return, which, being distinctly read, consented to, and signed and verified by oath or affirmation by the person," etc., "may be received as the list of such person." This list is to serve as a basis for an assessment of the tax. It should be observed that section 3173 does not apply generally to all objects of internal revenue taxation. The statutes of the United States disclose at least two distinct methods of taxation,—one requires a return containing a list of objects liable to tax, upon which return an assessment is made, and the other method requires that the tax be paid by a stamp affixed to the taxable article. This latter method is deemed adequate for the collection of numerous taxes, without the requirement of any return or assessment. This distinction is recognized in the war revenue act (30 Stat. 450), wherein, after providing for certain returns, the statute says: "The commissioner of internal revenue shall assess and collect the taxes found to be due as other taxes not paid by stamps are assessed and collected." Section 3173, in my opinion, relates to the former mode of taxation by return and assessment, and not to the latter method of collecting a tax by a stamp. So cautious was congress not to impose upon the person liable to taxation any duty beyond that of disclosure of his liability to taxation that it relieved him, if he so elected, of the preparation of the list or return, and made his disclosure of the objects liable to a tax, and his verification of a list, prepared by a deputy collector upon his disclosure, equivalent to a performance of the requirement to make a return.

The collector's powers, under section 3173, are confined to inquiries "respecting any objects liable to tax or the returns thereof," and the duty of the witness to testify is respecting any "objects liable to tax" or the returns thereof. The legal purpose of the inquiry is solely to enable the collector to assess and collect a tax. The powers of the collector are conditional upon the failure, neglect, or refusal of some person to deliver a return of "objects subject to tax," or upon the delivery of a return of "objects subject to tax" which was false, fraudulent, or contained understatements or undervaluations. In re Archer, 9 Ben. 455, Fed. Cas. No. 506; Wells v. Shook, 8 Blatchf. 254, Fed. Cas. No. 17,406. There is no language in this section that would warrant a collector in summoning a witness, or requiring the production of books, for the enforcement of a statute, or a regulation of a department, which required reports or returns other than those of objects subject to tax. For example, section 3358 relates to certain inventories and monthly abstracts required to be made by manufacturers of tobacco or snuff. The purpose of these requirements is to aid in the collection of internal revenues, and yet a failure to comply therewith subjects the manufacturer to no proceeding by the collector under section 3173.

Section 3173 is part of a chapter entitled, "Of Assessments and Collections." The term, "objects subject to tax," is used in various sections of the act. In U. S. v. Mann, 95 U. S. 580, 24 L. Ed. 531, it was held that "paid bank checks, unless it is alleged and proved that they were not duly and sufficiently stamped at the time they were made, signed, and issued, are not articles or objects subject to taxation," and that a person might lawfully refuse to suffer a collector to examine them, though section 3177 provided that a collector might enter upon premises to examine articles subject to tax. A return, therefore, of objects which have paid a tax, whether required by law or by regulation, is not a return of objects subject to tax, and is not within section 3173.

It is furthermore apparent that returns or reports are required by law or regulations for other purposes than to enable the collector to assess a tax upon the person who is required to make the return. They may be useful to aid in the detection of evasions of law by other persons than the one liable to taxation. They may furnish a test of the correctness of the list of objects subject to tax, or of the quality of the object of taxation. For example, returns of materials used in the manufacture of oleomargarine are required by regulation: but these are not returns of objects subject to tax, and are clearly not such returns as are referred to in section 3173. A district judge would have no power, under section 3175, to order a person to make such returns, or punish his failure to do so as a contempt, despite the fact that returns of materials might assist in determining the amount of the product. Nor are returns of "products" returns of objects liable to tax. U. S. v. Mann, 95 U. S. 580, 24 L. Ed. 531, is exactly to the point that an article or product upon which the tax has been paid with a stamp is no longer an object subject to tax. By the terms of the oleomargarine law, only that part of the product which is sold or removed for use is subject to a tax stamp.

The only part of the product which would be an object subject to tax would be that part which had been sold or removed in violation of law, without proper stamps.

The difficulties that arise in trying to apply the procedure under sections 3173 and 3175 to the oleomargarine law are a strong reason for following the view taken by the learned judge in the case of In re Kearns, supra. If we hold that the oleomargarine law was intended as a complete act in itself, that the taxes on the commodity were to be collected through tax-stamp requirements similar to those whereby the tax on tobacco and snuff is collected, and not through the distinct method of return and assessment contemplated by section 3173 and subsequent sections of the same chapter, we escape the difficulties which arise if we attempt to apply the procedure of return and assessment to returns which are not objects subject to tax, but of "materials and products."

Furthermore, the oleomargarine law contains no positive requirement that any returns shall be made. This, in itself, strongly supports the view that the method of return and assessment was not contemplated by the act. By section 5 it is left discretionary with the commissioner of internal revenue, contingent upon the approval of the secretary of the treasury, to make by regulation requirements of returns of materials and products. If no such regulations are made, the law is still sufficient. The inference is strong that for the collection of the tax of two cents per pound the stamp provisions and heavy penalties and forfeitures were considered adequate. While there are precedents for tax-collection proceedings of an extremely inquisitorial character, I do not attach much weight to the argument that without the powers conferred by sections 3173 and 3175 the collector is powerless to enforce the oleomargarine law. The general laws of the land are enforced by judicial proceedings and penal sanctions, without recourse to inquisitorial proceedings by special tribunals, and it is reasonable to infer that in enacting the oleomargarine law congress preferred to follow in the ordinary path, without extending the extraordinary powers conferred by sections 3173 and 3175 to new objects of legislation.

Furthermore, it seems improbable that, after enumerating in the oleomargarine law certain sections of the Revised Statutes, and omitting any reference to section 3173, it should be left to the commissioner of internal revenue to decide whether section 3173 should or should not be employed as a means of collecting the tax upon oleomargarine. The regulations established by the commissioner with the approval of the secretary of the treasury require a detailed statement of the quantity of oleomargarine sold or consigned, with the name, place of business, residence, county, and state of the consignee or purchaser. The returns to which the summons relates are "the monthly returns or reports." These are required to contain accounts of the quantities and kinds of materials used, of the quantity of oleomargarine produced, a special account of tax-paid oleomargarine returned to the factory, as well as a detailed statement of the oleomargarine sold or removed or destroyed, with the name and place of business of the vendee or consignee. It would be a most

unjustifiable extension of the provisions of section 3173, and an unwarranted enlargement of its words, "returns of objects subject to taxation," to make the section include such returns as those referred to in the summons.

Upon the whole, I am of the opinion that the petition of the collector must be denied, not alone for the reason that it prays that the witness be attached to show cause why he should not be adjudged to be in contempt and punished according to law, and does not pray for an order directing him to answer to inquiries of the collector (thus failing to make a case to support which Brimson's Case, 154 U. S. 447, 14 Sup. Ct. 1125, 38 L. Ed. 1047, is applicable as an authority), but because, in my opinion, neither the oleomargarine law, nor any regulation established thereunder, imposes upon the Oakdale Manufacturing Company the duty of making such "returns of objects subject to tax" as are referred to in section 3173 of the Revised Statutes of the United States, and because the collector has no power, under section 3173, to compel the witness to testify to the correctness of such monthly returns or reports as are required by the regulations. The petition is denied.