UNITED STATES v. LAMSON.

(Circuit Court, D. Rhode Island. November 5, 1908.)

No. 2,624.

1. **PERJURY** (§ 5*)—**OFFENSE UNDER FEDERAL STATUTE—FALSE OATH TO RETURN UNDER OLEOMARGARINE ACT.**

Section 6 of the oleomargarine act (Act May 2, 1902, c. 784, 32 Stat. 197 [U. S. Comp. St. Supp. 1907. p. 641]), in requiring wholesale dealers to keep such books and render such returns as the Commissioner of Internal Revenue may by regulation require under prescribed penalties for its violation, has no relation to the tax to be assessed on such dealer, and the regulations made thereunder and in force prior to their revision in 1907, in requiring an oath to the returns, do not have the force of law in such sense that a false oath to a return subjects the maker to prosecution for perjury under Rev. St. § 5392 (U. S. Comp. St. 1901, p. 3653).

[Ed. Note.—For other cases, see Perjury, Dec. Dig. § 5.*]

2. **INTERNAL REVENUE** (§ 16*)—**OLEOMARGARINE ACT—REGULATIONS RESPECTING RETURNS BY DEALERS.**

Under the regulations made by the Commissioner of Internal Revenue pursuant to Oleomargarine Act May 2, 1902, c. 784, § 6, 32 Stat. 197 (U. S. Comp. St. Supp. 1907, p. 641), and in force prior to 1907, which require wholesale dealers to make returns showing, among other things, the names and addresses of all persons to whom sales have been made, and that "the recapitulation should be signed by the firm name * * * and the person swearing to the return should sign on the dotted lines below the right hand of the printed affidavit," the oath required is to the recapitulation only, and not to the list of customers contained in the return.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 16.*]

On Motion to Quash Indictment.

Charles A. Wilson, U. S. Atty., and George H. Huddy, Jr., Asst. U. S. Atty.

Walter H. Barney, for defendant.

BROWN, District Judge. This is a motion to quash an indictment under section 5392, Rev. St. (U. S. Comp. St. 1901, p. 3653), for perjury in making false returns under the oleomargarine law.

By Act of May 9, 1902, c. 784, § 6, 32 Stat. 197 (U. S. Comp. St. Supp. 1907, p. 641), it is provided:

"Sec. 6. That wholesale dealers in oleomargarine, process, renovated, or adulterated butter shall keep such books and render such returns in relation thereto as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may, by regulation, require; and such books shall be open at all times to the inspection of any internal revenue officer or agent.

And any person who willfully violates any of the provisions of this section shall for each offense be fined not less than fifty dollars and not exceeding five hundred dollars, and imprisoned not less than thirty days nor more than six months."

Regulations made by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, in force at the date of the alleged offenses, now superseded by the revised regulations of 1907, relate to returns of wholesale dealers in oleomargarine:

"Wholesale dealers in oleomargarine will make monthly returns on form 217 (with inside sheets when needed to complete detailed statements), showing in detail the number of packages and number of pounds of oleomargarine received direct from the manufacturers and other wholesale dealers, also the quantity disposed of, with the name and address of each person to whom sold or consigned. * * *"

The regulations further provide:

"The recapitulation should be signed by the firm name immediately under totals on line 10, and the person swearing to the return should sign on the dotted lines below the right hand of the printed affidavit. Reports sworn to before persons other than internal revenue officers must have the seal of the attesting officer, as well as his signature, properly affixed thereto. * * * Collectors will refuse to accept returns from wholesale dealers in oleomargarine which are not signed and sworn to as herein required."

The regulations do not in specific terms require of the wholesale dealer that he should make a personal oath. The oath of other persons may be received. The indictment in this case charges that the wholesale dealer did make an oath to a return which contained items relating to sales by the wholesale dealer and to the names and addresses of the persons to whom sold or consigned. It is charged that three of those items were "wholly false and fictitious," etc.

The punishment provided under section 6 of the act of May 9, 1902, is a fine of not less than $50 and not more than $500 and imprisonment not less than 30 days nor more than 6 months. The provision for punishment under section 5392, Rev. St. (U. S. Comp. St. 1901, p. 3653), is:

"A fine of not more than two thousand dollars and imprisonment at hard labor not more than five years; and shall moreover, thereafter be incapable of giving testimony in any court of the United States until such time as the judgment against him is reversed."

It is this latter statute, and not the specific provision of the oleomargarine law, which the United States attorney contends is applicable.

The question before us is of considerable importance. Section 5392 is contained in chapter 4 of title 70. The title of chapter 4 is "Crimes against Justice." Section 5392, however, is broad in scope, and includes offenses which are not perjury at common law. U. S. v. Ambrose, 108 U. S. 336, 2 Sup. Ct. 682, 27 L. Ed. 746; Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415; U. S. v. Hardison (D. C.) 135 Fed. 419.

The sworn return of a wholesale dealer in oleomargarine relates neither to a pending controversy nor to a claim or contest in one of the departments. The return required from the wholesale dealer is not a return which is to be the basis of the assessment of a tax. The wholesale dealer's tax is not dependent upon the amount of his sales,

but upon his character as a wholesale dealer. It is quite obvious that the principal object of the department in requiring the returns to contain the names of persons to whom oleomargarine is sold is the detection of violations of law by third persons. See In re Kinney, Collector (D. C.) 102 Fed. 468–471; In re Kearns (D. C.) 64 Fed. 481–482.

There is a substantial distinction between a false oath made for use in a judicial proceeding, or in a quasi judicial proceeding in an administrative department, where a disputed question and right is involved and is to be determined upon sworn proofs, and a false oath which is not for use in a claim or contest, but which is made to aid in the collection of taxes from third persons or in the detection of violations of law. It certainly is not obvious that a failure to comply with a requirement imposed, not by statute, but by regulation, and relating to a duty of giving information to the government to enable it to detect violations of law, was intended by Congress to stand upon the same level and be subject to the same punishment as a crime against justice. In U. S. v. Eaton, 144 U. S. 677–688, 12 Sup. Ct. 764, 767, 36 L. Ed. 591, it was said:

"It would be a very dangerous principle to hold that a thing prescribed by the collector of internal revenue as a needful regulation under the oleomargarine act, for carrying it into effect, would be considered as a thing 'required by law' in the carrying on or conducting of the business of a wholesale dealer in oleomargarine in such manner as to become a criminal offense, punishable under section 18 of the act (Act Aug. 2, 1886, c. 840, 24 Stat. 212 [U. S. Comp. St. 1901, p. 2234]), particularly when the same act in section 5 (24 Stat. 210 [U. S. Comp. St. 1901, p. 2230]) requires a manufacturer of the article to keep such books and render such returns as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may by regulation require, and does not impose, in that section or elsewhere in the act, the duty of keeping such books and rendering such returns upon a wholesale dealer in the article."

Subsequent to the decision in that case amendment was made and punishment was prescribed for a violation of the requirement to "render such returns in relation thereto as the collector of internal revenue, with the approval of the Secretary of the Treasury, may by regulation require."

Congress has not required an oath to returns. The word "returns" does not necessarily import a statement under oath. Congress has left it to the Commissioner of Internal Revenue and to the Secretary of the Treasury to determine whether any returns shall be made by a wholesale dealer in oleomargarine, and what such returns shall be. Whether it has further conferred the right to require an oath to returns of this character, and thereby, in case of a false oath, to put the wholesale dealer under the perils and penalties of perjury, I have grave doubt. To leave it to the department to say whether returns of this character shall be made under the pains and penalties of perjury, subjecting the offender to a punishment greatly in excess of that specifically provided in the oleomargarine law, would seem to approach the conferring of legislative power upon the department. False swearing, whether in a court of justice or in a nonjudicial proceeding, may be equally reprehensible morally; but from a legal point of view

the difference between that false swearing which is a crime against justice and that false swearing which deprives a collector of internal revenue of information to assist his investigations is most important. In U. S. v. Eaton it was said:

"Regulations prescribed by the President and by the heads of departments, under authority granted by Congress, may be regulations prescribed by law, so as lawfully to support acts done under them and in accordance with them, and may thus have in a proper sense the force of law; but it does not follow that a thing required by them is a thing so required by law, as to make neglect to do the thing a criminal offense in a citizen, where a statute does not distinctly make the neglect in question a criminal offense."

Congress has not spoken in specific terms as to the requirement of an oath on the returns of a wholesale dealer. The requirement of an oath by regulations can only be supported on the ground that it is within the plain purview of the statute. It seems difficult to believe that it was within the purview of Congress that through a regulation of this kind an offender should be made liable to punishment so greatly exceeding that which Congress specified in the act. In Grier v. Tucker (C. C.) 150 Fed. 658, in Schafer v. Craft (D. C.) 144 Fed. 907, and in Craft v. Shafer, 153 Fed. 175, 82 C. C. A. 349, and Id., 154 Fed. 1002, 83 C. C. A. 677, the oleomargarine acts were spoken of as complete in themselves, containing provisions for all the punishments that Congress intended for violations of that act. There is good reason for viewing these acts as constituting a complete and comprehensive system of rights, remedies, and punishments.

In U. S. v. Bailey, 9 Pet. 238, 253, 9 L. Ed. 113, it appeared that the Secretary of the Treasury had established a regulation authorizing affidavits made before a justice of the peace, to be received and considered in proof of claims, and inquiry arose whether the Secretary of the Treasury had an implied power to require, authorize, allow, or admit any affidavits sworn before state magistrates in proof and support of any claim under the act of 1832 (Act July 5, 1832, c. 173, 4 Stat. 563). It was said:

"It is a general principle of law, in construction of all powers of this sort, that where the end is required the appropriate means are given. It is the duty of the Secretary to adjust and settle these claims, and in order to do so he must have authority to require suitable vouchers and evidence of the facts which are to establish the claim. No one can well doubt the propriety of requiring the facts which are to support a claim and rest on testimony to be established under the sanction of an oath. * * * "

The requirement by regulation that proof of claims against the United States should be made under oath could not be deemed usurpation of authority. Evidence is ordinarily under oath.

It may be proper to include within the scope of section 5392 false swearing in all cases where an oath is required by the rules of a department in support of any claims against the United States, or in support of any right, or in controverted matters wherein officers of the department act in a quasi judicial capacity; but, when section 5392 has been thus liberally and extensively applied, an attempt to extend it to a matter substantially different in character should be regarded with great caution. Doubts arise whether the reason of the law does

in fact run with and support this extension, and whether the matter was ever brought to the attention of Congress.

In U. S. v. United Verde Copper Company, 196 U. S. 207–215, 25 Sup. Ct. 222, 225, 49 L. Ed. 449, it was said:

"If rule 7 is valid, the Secretary of the Interior has power to abridge or enlarge the statute at will. If he can define one term, he can another. If he can abridge, he can enlarge. Such power is not regulation. It is legislation. The power of legislation was certainly not intended to be conferred upon the Secretary."

In all cases where proof of right is required, it is reasonable to require an oath. A department official, authorized to determine a contest upon evidence, is within the scope of his authority and within the scope of legislative intention when he requires an oath. To extend this authority by implication to nonanalogous cases, like the present, is to lose sight entirely of the nature of the crime of perjury and to subject a defendant to a severe punishment and forfeiture of civil rights by an accidental collocation of statutes and regulations and rules of law, which collocation was probably never seriously considered, either by Congress or by the department, which was limited to consider merely the enforcement of the oleomargarine law.

The United States attorney refers to section 3165, Rev. St. (U. S. Comp. St. 1907, p. 2057), which gives authority to the collector and deputy collector to administer oaths; but this does not, in my opinion, touch the question before us. The statute establishes the authority of a deputy collector to administer oaths, but not the authority of the department to require them in a proceeding of this character.

I have examined the decision in U. S. v. Hardison (D. C.) 135 Fed. 419. Upon page 423 are cited many cases in which convictions have been upheld for perjury when the oaths were not taken in judicial trials; but each case cited differs substantially from the present case. Each case involved some question of right of the affiant or other person, and was false swearing directly affecting some issue or proceeding. Such oaths were within the provisions of section 5392, in that they related to a "material matter." The present oath was not material to the amount of tax which the wholesaler was to pay, or to any issue or claim. It can hardly be said to be "material," unless we give that term a very wide extension.

It is possible to say that the giving of the names of customers might be "material" to inquiries or investigations which the government might choose to make; but it is more reasonable to hold that the words "material matter," if applicable to nonjudicial matters, are applicable in the same general sense as in judicial matters, and import some issue or right to which the oath relates, rather than a mere inquiry or investigation to be made for the detection of violations of law by third persons.

The substance of the offense seems to be the giving of wrong information, and thus depriving the department of means of tracing the goods after they have left the wholesaler's hand. Assuming that the information required is useful in detecting violations of law, and serves as a basis of inquiry, it does not become "material" in any proper sense until an inquiry is actually instituted.

I am unable to believe that Congress when it enacted the perjury statute (§ 5392 [U. S. Comp. St. 1901, p. 3653]), considered that the words "material matter" had a significance broad enough to include mere information of this character, or that Congress, in passing the oleomargarine laws and providing for regulations, meant to place it in the power of a department to say whether or not a man who sold oleomargarine and gave the wrong addresses of his customers should be regarded as a perjurer. It seems much more reasonable to hold that as Congress has fully expressed itself on the punishment of a failure to make returns, and as there is no substantial difference between the failure to make any returns and the making of erroneous returns, so far as the tracing of the goods is concerned, both cases are within the oleomargarine act and are subject to the same punishment.

Counsel for defendant cite U. S. v. Manion (D. C.) 44 Fed. 800, U. S. v. Bedgood (D. C.) 49 Fed. 54, and U. S. v. Maid (D. C.) 116 Fed. 650 (see, also, U. S. v. Keitel [D. C.] 157 Fed. 401; U. S. v. Matthews [D. C.] 146 Fed. 306), and call attention to the fact that in the matter of internal revenue returns the statute itself in some cases requires returns to be made under oath, and cite sections 3307, 3308, Rev. St. (U. S. Comp. St. 1901, p. 2157), returns by distillers; sections 3337, 3338, Rev. St. (U. S. Comp. St. 1901, pp. 2185, 2186), by brewers; sections 3358, 3359, Rev. St. (U. S. Comp. St. 1901, pp. 2198, 2199), by manufacturers of tobacco and snuff; section 3413, Rev. St. (U. S. Comp. St. 1901, p. 2249), by banks and bankers; sections 5210–5215, Rev. St. (U. S. Comp. St. 1901, pp. 3498–3501), returns by national banks. Counsel also cite the following as instances in which no oath is required by statute: Act Oct. 1, 1890, c. 1244, 26 Stat. 620 (U. S. Comp. St. 1901, p. 2226), manufacturers of opium; Act June 6, 1896, c. 337, § 5, 29 Stat. 254 (U. S. Comp. St. 1901, p. 2237), manufacturers of filled cheese; Act May 9, 1902, c. 784, 32 Stat. 193 (U. S. Comp. St. Supp. 1907, p. 636), manufacturers of process or renovated butter; Act May 9, 1902, c. 784, 32 Stat. 193 (U. S. Comp. St. Supp. 1907, p. 636), manufacturers of oleomargarine, Act May 9, 1902, c. 784, § 6, 32 Stat. 197 (U. S. Comp. St. Supp. 1907, p. 641), wholesale dealers in oleomargarine; Act June 7, 1906, c. 3047, 34 Stat. 217 (U. S. Comp. St. Supp. 1907, p. 625), dealers in denatured alcohol.

It is argued that, because in some cases the statute has expressly required sworn returns, the omission of the word "sworn" in this statute indicates an intentional distinction. This, however, is not conclusive. If a statute authorizes the department to require statements or returns which are to serve as evidence to substantiate a claim or a right, the requirement by regulation of a sworn return, in view of the purpose of the statute, might well be held to be within the statute, though the statute itself did not mention an oath; but it may well be doubted if a statute which authorizes a department to require returns from a wholesale dealer in oleomargarine discloses an intention of Congress to authorize a requirement of a return under oath of such matters as the names and addresses of customers of the wholesale dealer. In fact, there is a most serious question whether the reg-

ulations by their terms require an oath as to such details as the names and addresses of customers. It is provided:

"The recapitulation should be signed by the firm name, under totals on line 10, and the person swearing to the return should sign on the dotted lines below the right hand of the printed affidavit."

One would suppose that the thing to be sworn to was the thing to be signed. Paragraph 7 in the recapitulation is as follows: "Quantity disposed of during the months to persons not known to be wholesale dealers"—and there is an omission of any reference in this paragraph 7 to any of the detailed statements, which is significant in view of the fact that such reference is made in paragraphs 2, 3, and 6.

In the revised regulations of July, 1907, this paragraph is amended to read:

"The name of the person swearing to the recapitulation, together with official title and name of firm rendering report, must be entered in the blanks for that purpose immediately below line 10, and also be signed on the dotted lines below the right hand of the printed affidavit."

The amendment may be considered merely as an attempt to put into clearer language the requirement of the former regulation, and this tends to support the defendant's contention that the regulation requires an oath only to the recapitulation.

As the counts of the indictment each charge perjury in the making of a false oath as to the names and addresses of customers, as well as to the amount of goods sold to such customers, and do not charge perjury in the making of a false oath to the recapitulation, there is much force in the defendant's contention that the false oath with which he is charged is one which is authorized neither by a law of the United States nor by any regulation having the force of law. Criminal offenses are not to be created by forced construction of indefinite language contained in regulations.

The motion to quash should be granted for the following reasons:

The oath which is alleged to be false is not an oath authorized or required by a law of the United States, or by any regulation having the force of law.

Like the present amended regulations, the former regulations here involved provide for an oath only to the recapitulation, and not to such matters of detail as the names of customers.

Motion to quash granted.