### UNITED STATES v. CAMERON.

(District Court, D. Arizona. May 17, 1922.)

No. 1330.

1. **Elections &⊃311—Corrupt Practices Act held constitutional.**

Corrupt Practices Act, § 8, as amended (Comp. St. § 195), so far as it relates to the election of Senators and Representatives in Congress, as distinguished from the selective or party nomination of candidates, *held* within the powers of Congress, under Const. art. 1, § 5, and valid.

2. **United States &⊃11—"Officer authorized to administer oaths," under Corrupt Practices Act.**

A notary public *held* "an officer authorized to administer oaths" to statements required by Corrupt Practices Act, § 8 (Comp. St. § 195).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Officer.]

3. **United States &⊃11—Perjury &⊃1—Since adoption of Seventeenth Amendment, candidate at senatorial election not required to file statement by terms of Corrupt Practices Act pertaining to candidates for nomination at primary elections, etc.**

Since the adoption of the Seventeenth Amendment, providing for election of Senators by popular vote, a candidate at such election is not a "candidate for nomination at any primary election or nominating convention or for indorsement at any general or special election or election by the Legislature of any state," and is not required by the terms of Corrupt Practices Act, § 8 (Comp. St. § 195), to file a statement of receipts and expenditures, and an indictment for perjury cannot be predicated on a false oath to any statement made by him under said provision.

---

&⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Constitutional law ⬅⟹70(1)—Criminal statute cannot be enlarged to meet changed conditions.**

A criminal statute cannot be extended beyond its terms by the courts to apply to changed conditions created by subsequent changes in the Constitution or laws.

**5. United States ⬅⟹11—Provision of Corrupt Practices Act as to filing statement after election by Legislature not applicable to senatorial elections under Seventeenth Amendment.**

Corrupt Practices Act, § 8 (Comp. St. § 195), which requires every candidate for Senator to file a statement of receipts and expenditures "within thirty days after the day upon which the Legislature shall have elected a Senator," cannot be held to include a candidate for that office to be elected at a general election in accordance with the provisions of the Seventeenth Amendment.

**6. Perjury ⬅⟹11(2)—Oath held not to be "material matter."**

Corrupt Practices Act, § 8 (Comp. St. § 195), does not limit the amount a candidate may lawfully receive, but only the amount he may expend in aid of his candidacy, and while the making of a false statement of receipts by a candidate is a violation of the act, it is not a violation in a criminal sense, and the oath to such statement is not to a "material matter" within Criminal Code, § 125 (Comp. St. § 10295), and cannot be made the basis of an indictment for perjury.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Material Matter.]

Criminal prosecution by the United States against Ralph H. Cameron. On demurrer to indictment. Demurrer sustained.

Frederick H. Bernard, U. S. Atty., of Tucson, Ariz., and Francis D. Crable, Asst. U. S. Atty., of Tombstone, Ariz.

H. L. Partridge and F. C. Jacobs, both of Globe, Ariz., for defendant.

VAN FLEET, District Judge. The indictment under consideration charges the defendant, Ralph H. Cameron, with perjury, alleged to have been committed by him in making false oaths to two certain statements filed by him in supposed pursuance of the requirements of Section 8 of the Act known as the federal Corrupt Practices Act of 1910 (chapter 392, 36 Stat. 822–824), as amended by Act of August 19, 1911 (chapter 33, 37 Stat. 25–29), and the Act of August 23, 1912 (chapter 349, 37 Stat. 360), being Comp. St. § 195, while a candidate for the office of United States Senator from Arizona at the general election of 1920.

The indictment is in two counts. The substantive features of the first count, which is very elaborately drawn, stated in brief outline, are that Cameron, being at the time the nominee of the Republican party for such office, and being of competent age and qualifications therefor, on October 22, 1920, in the county of Yavapai, in this state, appeared in person before one Emmet T. Morrison, a notary public for said county, residing at Prescott, and being duly sworn upon his oath "did then and there make and subscribe a sworn written statement purporting to contain, among other things, a full, correct and itemized statement of all moneys and things of value theretofore received by him, the said Ralph H. Cameron, or by any one for him with

his knowledge and consent from any source in aid or support of his candidacy for the office aforesaid, with the names of all those who had furnished the same in whole or in part"; that said Cameron did then and there, for the purpose of verifying the said statement pursuant to the provisions of said act, and with the intent to file such statement "with the Secretary of the Senate of the United States as provided by the said act, * * * take his corporal oath * * * that the said statement by him * * * then and there made and subscribed as aforesaid was then true * * *"; that "it then and there became and was a material question whether * * * the said statement then and there made and subscribed by the said Ralph H. Cameron was a full, correct, and itemized statement of all moneys and things of value received by him, or by any one for him, with his knowledge and consent from any source in aid or support of his candidacy, together with the names of all those who had furnished the same, in whole or in part"; and it is alleged that the said Cameron "did then and there willfully, unlawfully, falsely, corruptly, and feloniously, and contrary to his oath so taken as aforesaid, depose and swear, among other things, in substance and to the effect that the said written statement so made and subscribed by him was a full, correct, and itemized statement of all moneys and things of value received by him, or by any one for him, with his knowledge and consent from any source in aid or support of his candidacy, with the names of all those who had furnished the same, in whole or in part, and that no moneys or things of value had been received by him, the said Ralph H. Cameron, or by any one for him, with his knowledge or consent, from any source in aid or support of his candidacy." It is then alleged that in truth the oath so taken by said Cameron was untrue, and known to him at the time to be untrue, in that the said statement failed to contain a correct recital of the moneys received by him in aid of his candidacy, or the names of the parties from whom the same was received, with a detailed specification in the indictment of the names of the persons alleged to have contributed, and the amounts alleged to have been severally contributed by them, respectively, which, it is alleged, were omitted from said statement, and that this statement, so falsely sworn to, was thereafter, on or about the 22d day of October, 1920, filed by said Cameron with the Secretary of the United States Senate in pursuance of said act.

The second count is in form and substance substantially the same, except that it relates to a statement of receipts and disbursements in aid of his candidacy, not required to be included in the statement referred to in the first count; and such second statement is alleged to have been in like manner subscribed and sworn to, but before one O. A. Kane, a notary public in and for the county of Maricopa, in said state; which statement purported to contain all items of receipts and disbursements by Cameron in aid of his candidacy, not included in the statement theretofore filed by him, as recited in the first count, and which last-mentioned statement, it is alleged, was by the said Cameron thereafter filed with the Secretary of the United States Senate on or about the 15th day of November, 1920.

The defendant has interposed a demurrer to the indictment which challenges its sufficiency upon various grounds, all of which have been earnestly pressed upon the attention of the court and quite as earnestly resisted by counsel for the government. The objections need not be here specially enumerated, since such as are material will be hereinafter sufficiently noticed in the course of their disposition. As to two of them I took occasion, upon the conclusion of the argument, to orally state my views adversely to the contentions of the defendant, and those views need not be here repeated further than to give the basis of my conclusions.

[1] The first of those objections was grounded upon the contention that the entire scheme of the act in question, so far as embodied in section 8, was in excess of the powers of Congress as granted by the Constitution (section 4, art. 1) for the control of elections, that the provisions of that section are therefore void in toto, and that it was in effect so ruled in the recent case of Newberry v. United States, 256 U. S. 232, 41 Sup. Ct. 469, 65 L. Ed. 913, involving the same act. I could not accede to the narrow construction thus sought to be put upon the provision of the Constitution, nor to the contention of counsel that the Newberry Case has the effect to sustain such view. Counsel rely upon certain general expressions employed in the opinion of the court in that case and in the concurring opinion of Mr. Justice Pitney, as lending color to their contention, the particular language in the court's opinion being this statement:

"The court below overruled a duly interposed demurrer which challenged the constitutionality of section 8; and by so doing we think fell into error."

—and the suggestion in the concurring opinion, to the effect that:

"Since the majority of the court hold the act is invalid, it would subserve no useful purpose," etc.

But these mere general expressions cannot be given the effect claimed for them. What the court decided is to be deduced from the specific questions discussed and the conclusions announced thereon, and from these it appears that the only features of section 8 that the court regarded as contravening the limits of the constitutional grant were the provisions undertaking to deal with the nomination or choice of candidates for election and the manner of their selection. This is clearly shown by the language of the court, where it is said:

"If it be practically true that under present conditions a designated party candidate is necessary for an election—a preliminary thereto—nevertheless his selection is in no real sense part of the manner of holding the election. This does not depend upon the scheme by which candidates are put forward. Whether the candidate be offered through primary, or convention, or petition, or request of a few, or as the result of his own unsupported ambition does not directly affect the manner of holding the election. Birth must precede, but it is no part of either funeral or apotheosis."

And again:

"We cannot conclude that authority to control party primaries or conventions for designating candidates was bestowed on Congress by the grant of power to regulate the manner of holding elections. The fair intendment of the words does not extend so far; the framers of the Constitution did not

ascribe to them any such meaning. Nor is this control necessary in order to effectuate the power expressly granted. On the other hand, its exercise would interfere with purely domestic affairs of the state and infringe upon liberties reserved to the people."

That the court did not regard the powers of Congress as being circumscribed within the narrow lines contended for by defendant is fully disclosed by the closing paragraph of the opinion, where it is said:

"As 'each house shall be the judge of the elections, qualifications and returns of its own members,' and as Congress may by law regulate the times, places and manner of holding elections, the national government is not without power to protect itself against corruption, fraud or other malign influences."

[2] The other objection upon which I stated my views was based upon the claim that the indictment disclosed the alleged false oath in each count to have been taken before a notary public of the state, and that a notary public was not an officer authorized to administer the oaths required by the act in question. This objection I deemed answered against defendant's contention by section 1778, R. S. (Comp. St. § 3259), and by the Act of August 15, 1876, c. 304, 19 Stat. 206 (Comp. St. § 1475), both of which, so far as appears, stand unrepealed; and I still entertain that view.

At the time of announcing these conclusions I entertained the impression that the remaining objections, not then fully submitted, would be as readily disposed of and enable me to submit the indictment to a jury; but, coming to examine them more maturely since their final submission, I have been impelled to the conclusion that this tentative view was erroneous, and that certain of the objections remaining for disposition and now to be considered present insuperable obstacles to sustaining the validity of the indictment. I have accordingly felt called upon by the importance of the case to state my conclusions in writing.

[3] These remaining objections arise out of the changed aspect of the Corrupt Practices Act, and particularly section 8, resulting from the decision in the Newberry Case, together with the change wrought by the Seventeenth Amendment in the method of electing United States Senators, as affecting the sufficiency and materiality of the facts charged in either count of the indictment to constitute a public offense; the defendant's contention being that neither count, when considered in the light of that decision and such amendment, states an offense under the act. As the two counts are based upon different provisions of the act, it will be convenient to consider the contention separately as to each.

The first count, as we have seen, sets out as the basis of the offense there sought to be charged, the taking of a false oath to the statement subscribed and sworn to by defendant on October 22, 1920, prior to the general election at which he was chosen Senator, and the provision of the act requiring such ante-election statement to be filed, is paragraph 3 of section 8. That paragraph provides:

"Every person who shall be a candidate for nomination at any primary election or nominating convention, or for indorsement at any general or spe-

cial election, or election by the Legislature of any state, as Senator in the Congress of the United States, shall, not less than ten nor more than fifteen days before the day for holding such primary election or nominating convention, and not less than ten nor more than fifteen days before the day of the general or special election at which he is seeking indorsement, and not less than five nor more than ten days before the day upon which the first vote is to be taken in the two houses of the Legislature before which he is a candidate for election as Senator, file with the Secretary of the Senate at Washington, District of Columbia, a full, correct, and itemized statement of all moneys and things of value received by him, or by anyone for him with his knowledge and consent, from any source, in aid or support of his candidacy, together with the names of all those who have furnished the same, in whole or in part; and such statement shall contain a true and itemized account of all moneys and things of value given, contributed, expended, used, or promised by such candidate, or by his agent, representative, or other person for and in his behalf with his knowledge and consent, together with the names of all those to whom any and all such gifts, contributions, payments, or promises were made for the purpose of procuring his nomination or election." Comp. St. § 195.

It will be observed that this provision has to do only with one who—

"shall be a candidate for nomination at any primary election or nominating convention, or for indorsement at any general or special election, or election by the Legislature of any state, as Senator in the Congress of the United States."

Such a candidate only is required by its terms to make, subscribe and swear to the statement there required to be filed. It is contended by defendant, and I am constrained to think correctly so, that the facts alleged in this count do not bring him within the terms of the section as one required to file the statement there charged as having been falsely sworn to and that this being true the alleged false oath counted upon does not constitute a competent basis upon which to predicate a charge of perjury.

This count does not charge, nor would it have been material, in view of the ruling in the Newberry Case and the adoption of the Seventeenth Amendment, to have charged, that defendant was either a candidate at a primary election or before a nominating convention, or by indorsement at a general or special election or for election by the Legislature of a state as a Senator in Congress, and he is very clearly, therefore, not brought by the allegations of the pleading within the category of those required under this provision of the act, as modified by that decision, to make, file, or swear to the statement there counted upon; and nothing is better settled with reference to the offense of perjury than that it may not be based upon an oath, however solemnly taken, which is not required by the law to be taken by the party charged. The principle is so thoroughly recognized, indeed, as to call for no citation of authorities in its support.

[4] It was urged by the government's attorneys that the defendant was brought within the terms of the statute by the fact that he is alleged to have been a candidate for election as Senator at the impending general election by the people upon the theory that the Seventeenth Amendment is to be regarded as a part of the act, and I was rather inclined at first to give some weight to this view. But more mature consideration satisfies me that that view is wholly fallacious

282 F.—44

and that the amendment cannot be regarded as in any manner or for any purpose a part of this act. To hold that it is would manifestly require the court to interpolate into the statute by construction language that is not to be found there—something that under no circumstances may be indulged to sustain a criminal charge.

The idea of the United States attorney was based, I fear, upon no better foundation than a tentative suggestion put by the court at the argument to defendant's counsel in the nature of an inquiry whether "the method of selecting a United States Senator could not be changed and still leave the election within the general scope and effect of the act." But a very little reflection satisfies me that the answer must be in the negative, unless, as suggested, we are to ignore well-settled principles applicable to criminal statutes.

The Newberry Case really makes an apt answer to any such idea, where it is said:

"Moreover, the criminal statute now relied upon antedates the Seventeenth Amendment and must be tested by powers possessed at the time of its enactment. An after-acquired power cannot ex proprio vigore validate a statute void when enacted. See Sutherland Stat. Const. (2d Ed.) vol. 1, § 107. A concession that the Seventeenth Amendment might be applicable in this controversy, if assisted by appropriate legislation, would be unimportant, since there is none."

So here, while the provisions of the Seventeenth Amendment may be made applicable to the act in question by appropriate amendment, they cannot, to meet the necessities of a particular case, be read into it by the court to the displacement of the language put there by Congress. In Field v. United States (C. C. A. 8th Circuit) 137 Fed. 6, 8, 69 C. C. A. 568, the court very aptly states the limitations upon the power of the court in the interpretation of penal statutes, where it says:

"An act which is not clearly an offense by the express will of the legislative department of the government must not be made so after its commission by a broad construction adopted by the judiciary. The definition of the offense and the classification of the offenders are legislative and not judicial functions, and where, as in the case at bar, a penal statute is plain and unambiguous in its terms, the courts may not lawfully extend it, by construction, to a class of persons who are excluded from its effect by its terms, because in their opinion, the acts of the latter are as mischievous as those of the class whose deeds the statute denounces. U. S. v. Wilberger, 5 Wheat. 96, 5 L. Ed. 37; U. S. v. Clayton, Fed. Cas. No. 14814; In re McDonough (D. C.) 49 Fed. 360; U. S. v. Lake (D. C.) 129 Fed. 499."

As to the effect generally upon existing statutes of a subsequently adopted constitutional amendment affecting their application, the Supreme Court of Indiana, in Case of Fesler, 145 Ind. 71, 44 N. E. 37, 32 L. R. A. 578, say:

"It is settled law in this and other states that a constitutional amendment inconsistent with previous constitutional provisions and legislative enactments operates to repeal such constitutional provisions and legislative enactments. Griebel v. State, 111 Ind. 369, and authorities there cited; Pierce v. Delamater, 1 N. Y. 17; Potter's Dwarr. Stat. 113; Sedgw. Stat. Const. L. 107."

It results, therefore, that this count wholly fails to charge the defendant with a public offense.

[5] As to the second count, the contention gives rise to much the same considerations. That count is based upon an alleged false oath taken in verifying the statement required by paragraph 4 of section 8, referred to in argument as the "after-election" statement. Paragraph 4 reads as follows:

"Every such candidate for nomination at any primary election or nominating convention, or for indorsement or election at any general or special election, or for election by the Legislature of any state, shall, within fifteen days after such primary election or nominating convention, and within thirty days after such general election or special election, and within thirty days after the day upon which the Legislature shall have elected a Senator, file with the clerk of the House of Representatives or with the secretary of the Senate, as the case may be, a full, correct and itemized statement of all moneys and things of value received by him or by any one for him with his knowledge and consent, from any source, in aid or support of his candidacy, together with the names of all those who have furnished the same in whole or in part; and such statement shall contain a true and itemized account of all moneys and things of value given, contributed, expended, used or promised by such candidate, or by his agent, representative, or other person for and in his behalf with his knowledge and consent, up to, on, and after the day of such primary election, nominating convention, general or special election, or election by the Legislature together with the names of all those to whom any and all such gifts, contributions, payments, or promises were made for the purpose of procuring his nomination, indorsement, or election."

A reading of that provision shows that it has reference to candidates for both Representatives and Senators and its requirements are, therefore, to be read distributively as they relate to the one or the other. So read, it clearly shows that in its reference to candidates the words "for election at any general or special election" have reference to a candidate for representative and that the words "for election by the Legislature of any state" refer to a candidate for Senator. Thus construed I am satisfied that the defendant's contention that the language of the section cannot be held to include a candidate for the Senate to be elected at a general election by the people in accordance with the provisions of the Seventeenth Amendment must, for the same reasons applying to the first count, be sustained. It results from these considerations that the second count, like the first, must be held to state no public offense against this defendant.

There is one other contention very strongly urged by defendant affecting the sufficiency of both counts and that is that the facts alleged in each are wholly immaterial as a basis or predicate of a charge of perjury; and as to which the United States attorney has very frankly stated to the court that he is inclined to think the objection well taken and may not be successfully met. As to such concession it should be said that while it does not relieve the court of the necessity of examining for itself the question involved it discloses on the part of the official making it a spirit of fairness and a conception of professional ethics which must always meet with the cordial commendation and approval of the court.

[6] The contention, briefly stated, is based upon the proposition that while the Corrupt Practices Act requires a candidate to include in the statements required all items of receipts as well as disbursements it does not undertake to limit the amount of the former in any

respect, but solely his expenditures: and that it is only for exceeding the limit allowed for the latter purpose that it is given criminality and upon which a penalty is imposed. That, in other words, under the act a candidate may receive from any source for the purpose of his election any amount, no matter how large, but is only to be punished in the event that he expends for the purposes of his election more than the limit prescribed by the act. This being true it is claimed that, as disclosed by the averments of the indictment, the candidate in neither count is charged with any act violative of the statute other than a failure in his statement to make proper return of contributions received by him and that in each instance the oath is alleged to be false only in that particular; that while the facts alleged may disclose that the defendant had violated the provisions of the Corrupt Practices Act in the character of the statement made by him and thus rendered himself liable to prosecution under that act, the facts alleged are wholly immaterial as a basis for a charge of perjury.

I am of opinion that this objection is well taken. Perjury as known to the federal law is defined in section 125 of the federal Penal Code, thus:

"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, shall wilfully and contrary to such oath state or subscribe any material matter which he does not believe to be true, is guilty of perjury, and shall be fined not more than two thousand dollars and imprisoned not more than five years." Comp. St. § 10295.

It is to be observed that under that definition it is not sufficient to constitute the offense that the oath shall be merely false, but that it must be false in some "material matter." Applying that definition to the facts stated in either count of this indictment, and it would seem that there is an entire lack in any essential sense to disclose that the particulars as to which the oath is alleged to have been false were material in the essential sense required for the purposes of an indictment for this offense. It should be kept in mind that the charge here is not of a violation of the Corrupt Practices Act, nor, as in the Newberry Case, a charge of conspiracy to violate that act, but is a charge of perjury committed in making a false oath in a matter required to be done under the act. All the matters alleged therefore in either count with reference to that act as matter of pleading are merely by way of inducement to show the circumstances under which the alleged false oath was taken, and if those facts were not of a character to disclose a criminal violation of that act they would seem not to possess the materiality here essential to constitute perjury in swearing falsely to them. In this view it is quite clear that if an indictment, seeking to charge a violation of the Corrupt Practices Act, contained no facts other than those charged here it would fail to state an offense under that act, since it is as defendant contends, no offense under the act to collect or receive any amount for one's election expenses, so long as you do not expend more than the act allows. The

case, I think, falls within the principles of United States v. Lamson (C. C.) 165 Fed. 80, and cases there cited.

As a result of these conclusions, the demurrer must be sustained, and the indictment dismissed; and that will be the order.